Haji BISMULLAH a/k/a Haji Bismillah, and a/k/a Haji Besmella,

Haji Mohammad Wali, Next Friend of Haji Bismullah, Petitioners

v.

Robert M. GATES, Secretary of Defense, Respondent.

Huzaifa Parhat, et al., Petitioners

v.

Robert M. Gates, Secretary of Defense, et al., Respondents.

Nos. 06–1197, 06–1397.

United States Court of Appeals, District of Columbia Circuit.

Oct. 3, 2007.

Peter D. Keisler, Acting Attorney General, Paul Clement, Solicitor General, Gregory G. Katsas, Acting Associate Attorney General, Gregory G. Garre, Deputy Solicitor General, Jonathan F. Cohn, Deputy Assistant Attorney General, and Doug-

las N. Letter, Robert M. Loeb, August E. Flentje, and Catherine Y. Hancock, Attorneys, U.S. Department of Justice, were on the petition for rehearing for respondent.

John B. Missing, Jeffrey I. Lang, and Jennifer R. Cowan, for Huzaifa Parhat, et al., and Sabin Willett, Rheba Rutkowski, Neil McGaraghan, Jason S. Pinney, and Susan Baker Manning for Haji Bismullah, et al., were on the joint opposition to the petition for rehearing.

Before: GINSBURG, Chief Judge, and HENDERSON and ROGERS, Circuit Judges.

Opinion for the Court filed by Chief Judge GINSBURG.

GINSBURG, Chief Judge:

The petitioners are eight men detained at the Naval Station at Guantánamo Bay, Cuba. Each petitioner seeks review under the Detainee Treatment Act (DTA), Pub.L. No. 109–148, § 1005(e)(2), 119 Stat. 2742–43 (Dec. 30, 2005), of the determination by a Combatant Status Review Tribunal (CSRT or Tribunal) that he is an "enemy combatant." In our opinion of July 20, 2007, we addressed various procedural motions filed by the Government and the petitioners to govern our review of the merits of the detainees' petitions. *Bismullah v. Gates (Bismullah I)*, 501 F.3d 178 (D.C.Cir. 2007). The Government then petitioned for rehearing or, in the alternative, suggested rehearing en banc. The petition for rehearing addresses two distinct aspects of *Bismullah I*: the scope of the record on review before the court; and the extent to which the Government must disclose that record to the petitioners' counsel.[1] We deny the Government's peti-

1. In support of its petition for rehearing, the Government attached the unclassified declarations of Michael V. Hayden, Director of Central Intelligence; Gordon England, Deputy Secretary of Defense; Keith Alexander, Director of the National Security Agency; Robert Mueller, Director of the Federal Bureau of Investigation; and J. Michael McConnell, Di-

rector of National Intelligence. The Government also attached the Secret declaration of Mr. Mueller. In addition, the Government sought leave to file *ex parte* and *in camera* the Top Secret–SCI declarations of Mr. Alexander and Mr. Hayden for review by judges only. Because the Top Secret–SCI declarations are

tion for rehearing for the reasons discussed below.

## I. The Scope of the Record on Review.

As we explained in *Bismullah I*, the Secretary of Defense, in a July 2004 Memorandum for the Secretary of the Navy, established skeletal procedures for the conduct of a CSRT proceeding with respect to a foreign national held at Guantánamo to "review the detainee's status as an enemy combatant." 501 F.3d 178; 181. The Secretary of the Navy then issued a memorandum elaborating upon those procedures in three enclosures, known as E–1, E–2, and E–3 (collectively, the DoD Regulations). *See id.* The DoD Regulations provide that the Tribunal is "authorized," insofar as is relevant here, to

> [r]equest the production of such reasonably available information in the possession of the U.S. Government bearing on the issue of whether the detainee meets the criteria to be designated as an enemy combatant, including information generated in connection with the initial determination to hold the detainee as an enemy combatant and in any subsequent reviews of that determination, as well as any records, determinations, or reports generated in connection with such proceedings (cumulatively called hereinafter "Government Information").

E–1 § E(3); *see* 501 F.3d at 181. The Recorder must collect the Government Information, examine it, and then decide which information to pass on to the Tribunal. 501 F.3d at 181; E–2 § C(1). The Recorder is required to

present to the Tribunal such evidence in the Government Information as may be sufficient to support the detainee's classification as an enemy combatant ... (the evidence so presented shall constitute the "Government Evidence") ... [and, in] the event the Government Information contains evidence to suggest that the detainee should not be designated as an enemy combatant, the Recorder shall also separately provide such evidence to the Tribunal.

E–1 § H(4); E–2 § B(1), C(6).

In *Bismullah I* the Government argued that the record on review should consist solely of the Record of Proceedings, which, under the DoD Regulations, includes only such Government Information as the Recorder forwarded to the Tribunal. *See* 501 F.3d at 182, 185; E–1 § I(4); E–2 § C(8). Taking the view that the record on review should consist of "all evidence reasonably available to the Government," the petitioners contended that the record should include all of the Government Information. 501 F.3d at 184. We held the record on review must include all the Government Information because the DTA requires the court to review the CSRT determination to ensure it is "consistent with the standards and procedures specified by the Secretary of Defense ... (including the requirement that the conclusion of the Tribunal be supported by a preponderance of the evidence ... )." DTA § 1005(e)(2)(C).[2] 501 F.3d at 185. Whether the Recorder selected to be put before the Tribunal all exculpatory Government Information, as required by

---

not material to our disposition of the Government's petition for rehearing, we deny the motion for leave to file the Top Secret–SCI declarations insofar as it pertains to the Government's petition for rehearing by the panel.

**2.** We also held the record on review includes any evidence submitted to the Tribunal by the

detainee or his Personal Representative, 501 F.3d at 186, a matter not in dispute here. Nor is it disputed that any material requested by the Tribunal pursuant to the DoD Regulations is part of the record on review.

the DoD Regulations, and whether the preponderance of the evidence supported the conclusion of the Tribunal, cannot be ascertained without consideration of all the Government Information. 501 F.3d at 185–86.

In its petition for rehearing, the Government asserts that *Bismullah I* defined the record on review to include "a broad and amorphous class of material" out of "a desire to ensure that exculpatory information was properly considered." The Government accordingly objects to *Bismullah I* on three grounds.

■■ First, the Government contends that the Congress "modeled" the DTA on Army Regulation 190–8, which governs how the Army determines the status of an enemy detainee who claims prisoner-of-war status under the Geneva Conventions. The Government asserts that Army Regulation 190–8 does not require "that the military turn over all information in any file concerning a detainee" to the military tribunal that determines his status as a prisoner of war. Putting aside a most obvious distinction that status determinations made pursuant to Army Regulation 190–8 are not subject to direct judicial review, we believe the more important point is that neither does *Bismullah I* require the Government to turn over to the CSRT all information in its files concerning a detainee; adopting the definition of Government Information exactly as it appears in the DoD Regulations themselves, the court in *Bismullah I* required the Government to collect (and preserve for judicial review) only the relevant information in its possession that is reasonably available. 501 F.3d at 185–86. In any event, Army Regulation 190–8 is irrelevant because this court is bound not by it but by the DTA, which charges the court to ensure that the CSRT's determination is consistent with the DoD Regulations and

that the conclusion of the Tribunal is supported by a preponderance of the evidence.

Second, the Government contends that *Bismullah I* imposed upon the Government a greater obligation to "turn over" exculpatory evidence for a detainee than the Due Process Clauses of the Constitution impose upon prosecutors in criminal trials. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Whether the Government is correct—a matter upon which we express no view—is irrelevant for the same reason that Army Regulation 190–8 is irrelevant: as just noted, the DTA requires that the record on review include all the Government Information.

Third, the Government argues—and this seems to be its only real and practical concern—that if *Bismullah I* "is allowed to stand, the Government ... will be required to undertake searches of all relevant Department of Defense ('DoD') components and all relevant federal agencies in an effort to recreate a 'record' that is entirely different from the record before the Tribunal that made the decision at issue in a DTA case." The burden of collecting all these materials, the Government says, would be so great that it would "divert limited resources and sidetrack the intelligence community from performing other critical national security duties during a time of war." For example, the Government reports that its searches of certain databases for relevant documents are yielding "tens of thousands, and in many cases hundreds of thousands, of documents" relating to a given detainee. According to Deputy Secretary of Defense Gordon England, two offices within the DoD have expended well over 2000 man-hours in a recent effort to collect material relating to six detainees who have petitioned for review of their status determination.

The Government, it seems, is overreading *Bismullah I* and underreading the DoD Regulations. Those regulations provide that "information in the possession of the U.S. Government bearing on the issue of whether the detainee meets the criteria to be designated as an enemy combatant" comes within the definition of Government Information only if it is "reasonably available." E–1 § E(3); *see* 501 F.3d at 181. In its petition for rehearing, the Government adverts repeatedly to this limitation upon the scope of Government Information. Yet, the Government reports that it "is now conducting ... entirely new searches of all relevant DoD components and all relevant federal agencies." A search for information without regard to whether it is "reasonably available" is clearly not required by *Bismullah I.*

Indeed, the Government states elsewhere in its petition for rehearing that it does "not believe that the information" it is now seeking "is properly considered 'reasonably available.' " [3] Apparently, the Government is searching for all relevant information without regard to whether it is reasonably available because it did not retain all the Government Information that the Recorder collected.[4] The Government has consequently determined that it must now search for relevant information without regard to whether the information is reasonably available "because [it] can conceive of no other comprehensive method to ensure that [it] identif[ies] information that

the Recorder could have examined." The Government explains that it did not retain all the Government Information because, "[a]t the time, Recorders had no reason to believe that DoD would be required to produce (or explain post hoc) what was *not* provided to the Tribunal." We note in the Government's defense that CSRTs made hundreds of status determinations, including those under review in the present cases, before the DTA was enacted in December 2005 and therefore without knowing what the Congress would later specify concerning the scope and nature of judicial review.

Be that as it may, if the Government cannot, within its resource constraints, produce the Government Information collected by the Recorder with respect to a particular detainee, then this court will be unable to confirm that the CSRT's determination was reached in compliance with the DoD Regulations and applicable law. See 501 F.3d at 186 n. *. The Government does have an alternative: It can abandon its present course of trying to reconstruct the Government Information by surveying all relevant information in its possession without regard to whether that information is reasonably available, and instead convene a new CSRT. If the Government elects to convene a new CSRT, it will have to collect only the Government Information specified by the DoD Regulations— that is, the relevant information in its possession that is then *reasonably available.*[5]

---

3. We express no view as to whether any of the information the Government is seeking is not "reasonably available."

4. The Government tells us "there is no readily accessible set of Government Information for completed CSRTs" and that the Government Information is not "sitting in a file drawer." Thus, it seems that, having collected the Government Information and selected the Government Evidence for the Tribunal to see, the Recorder then did not retain that portion of

the Government Information he did not forward to the Tribunal.

5. The Government apparently has convened a second or successive CSRT for a number of detainees. *See* Mark Denbeaux et al., *No-Hearing Hearings, CSRT: The Modern Habeas Corpus? An Analysis of the Proceedings of the Government's Combatant Status Review Tribunals at Guantánamo* 37–39. In addition, pursuant to the DTA, Department of Defense regulations provide that a new CSRT may be convened in the event that material "new

In summary, the record on review must include all the Government Information, as defined by the DoD Regulations. If the Government did not preserve that entire body of information with respect to a particular petitioner, then it will have either to reassemble the Government Information it did collect or to convene a new CSRT, taking care this time to retain all the Government Information.

## II. Access by the Petitioner's Counsel to Classified Government Information.

The Government also objects to *Bismullah I* insofar as it requires the Government to turn over Government Information to the petitioners' counsel. The Government sees two problems with this: The disclosure of classified Government Information "could seriously disrupt the Nation's intelligence gathering programs"; and the burden of reviewing all the Government Information to determine whether it must be turned over is so great that it will "divert limited resources and sidetrack the intelligence community from performing other critical national security duties during a time of war."

In *Bismullah I*, we dealt with the Government's concern about disclosure by providing, just as the Government urged, that it may withhold from the petitioners' counsel any Government Information that is either "highly sensitive information, or ... pertain[s] to a highly sensitive source or to anyone other than the detainee." 501 F.3d

at 187–88.[6] The Government's need to review the Government Information in order to determine whether it fits within any of these three exceptions gives rise to the Government's present concern about the burden of complying with *Bismullah I*.

Although the Government represented in its brief and at oral argument in *Bismullah I* that it would need to withhold "only a small amount of information" from a detainee's counsel, the Government now indicates that a substantial amount of the Government Information comes within one or another of the three exceptions, thereby "exponentially increas[ing] the magnitude of" its review of Government Information to determine what to withhold. The Government's petition is unclear as to why it now anticipates so much more Government Information will be non-disclosable. Perhaps it is because, as discussed above, the Government has been searching for all relevant information without regard to whether it is reasonably available. According to the DoD Regulations, "[c]lassified information ... which the originating agency declines to authorize for use in the CSRT process is not reasonably available." E–1 § D(2). Consequently, if the Government convenes a new CSRT and the Recorder collects as Government Information only the information in its possession that is both relevant and "reasonably available," then the amount of information to be redacted may indeed be as small as the Government anticipated earlier. We note, however, that, according to the DoD Regu-

evidence" comes to light. DTA § 1005(a)(3); Department of Defense, Office for the Administrative Review of the Detention of Enemy Combatants (OARDEC) at U.S. Naval Base Guantánamo Bay, Cuba, Instruction 5421.1(4)-(5) (May 7, 2007). According to its Director, Frank Sweigart, OARDEC has convened at least one new CSRT pursuant to Instruction 5421.1. *See Al Ginco v. Gates*, No. 07–1090 (D.C.Cir.), Decl. of Frank Sweigart ¶ 4 (Sept. 13, 2007). We express no view

as to the availability of any other type of relief in a case in which the Government did not preserve the Government Information with respect to a particular detainee.

**6.** To the extent the Government now suggests that certain information may be too sensitive to disclose even to the court, we leave that issue for case-by-case determination upon *ex parte* motion filed by the Government.

lations, when an originating agency withholds relevant information, it must "provide either an acceptable substitute for the information requested or a certification to the Tribunal that none of the withheld information would support a determination that the detainee is not an enemy combatant." E–1 § E(3)(a).

■ In any event, the proportion of the Government Information that may be withheld from the petitioners' counsel should not affect to an appreciable degree the burden upon the Government of producing the Government Information to the petitioners' counsel. Regardless of how much ultimately may be withheld, the Government will have to conduct the same review of the Government Information in order to make that determination; so much was inherent in the Government's proposed standard for withholding information, which we adopted. Thus, the real import of the Government's argument seems to be that having to review the Government Information to determine whether it must be disclosed creates a substantial burden for the Government and therefore, because the Government obviously cannot indiscriminately turn over all of the Government Information to the petitioners' counsel, the only solution is to turn over none of it. As we explained in *Bismullah I*, however, entirely *ex parte* review of a CSRT determination is inconsistent with effective judicial review as required by the DTA and should be avoided to the extent consistent with safeguarding classified information. 501 F.3d at 185–86, 187–88.[7]

---

7. Nonetheless, if it is true that most of the Government Information will come within an exception to the requirement that the petitioners' counsel be given access to the Government Information, then the practical effect of the exceptions may yet be that our review of a CSRT determination is in large part *ex parte*.