A separate statement concurring in the denial of rehearing en banc filed by Chief Judge GINSBURG, with whom Circuit Judges ROGERS, TATEL, and GRIFFITH join, is attached.
A separate statement concurring in the denial of rehearing en banc filed by Circuit Judge GARLAND is attached.
A separate statement dissenting from the denial of rehearing en banc filed by Circuit Judge HENDERSON, with whom Circuit Judges SENTELLE, RANDOLPH, and KAVANAUGH join, is attached.
A separate statement dissenting from the denial of rehearing en banc filed by Circuit Judge RANDOLPH, with whom Circuit Judges SENTELLE, HENDERSON, and KAVANAUGH join, is attached.
A separate statement dissenting from the denial of rehearing en banc filed by Circuit Judge BROWN is attached.

ORDER

PER CURIAM.
Respondents’ petition for rehearing eh banc and the response thereto were circulated to the full court, and a vote was requested. Thereafter, a majority of the judges eligible to participate did not vote in favor of the petition. Upon consideration of the foregoing and the motion to expedite review of the petition for rehear *384 ing en banc and any subsequent proceedings; the motion for leave to file ex parte/in camera top secret-SCI declarations for judges’ review only and the joint opposition thereto; and the letters filed pursuant to Federal Rule of Appellate Procedure 28(j), it is
ORDERED that the petition for rehearing en banc be denied. It is
FURTHER ORDERED that the motion to expedite be dismissed as moot. It is
FURTHER ORDERED that the motion for leave to file ex parte/in camera top secret-SCI declarations for judges’ review only be granted.
GINSBURG, Chief Judge,
with whom Circuit Judges ROGERS, TATEL, and GRIFFITH join, concurring in the denial of rehearing en banc:
The panel that heard this case held that “the record on review must include all the Government Information,” which the controlling DoD Regulations define as “reasonably available information in the possession of the U.S. Government bearing on the issue of whether the detainee meets the criteria to be designated as an enemy combatant.” Bismullah v. Gates (Bismullah II), 503 F.3d 137, 138-39 (D.C.Cir. 2007); Bismullah v. Gates (Bismullah I), 501 F.3d 178, 185-86 (D.C.Cir.2007); E-l § E(3). In his dissent from the court’s denial of rehearing en banc, Judge Randolph says of the panel’s ruling that it “is contrary to the rule and the statute governing the contents of the record in cases such as these, it violates the restrictions on our jurisdiction in the Detainee Treatment Act [ (DTA), Pub.L. No. 109-148, § 1005(e)(2), 119 Stat. 2680, 2742-43 (Dec. 30, 2005) (codified as amended at 10 U.S.C. § 801 note) ], and it risks serious security breaches for no good reason.” Stmt, of Randolph, J., at 1302. Like Judge Randolph, I would not ordinarily write a separate opinion on a denial of rehearing en banc, but his suggestion that the panel’s decision was not only erroneous but also dangerous should not go unremarked.
Judge Randolph contends that 28 U.S.C. § 2112(b) and Federal Rule of Appellate Procedure 16(a), which implements § 2112(b), “make crystal clear that ... the record does not include information never presented to the Combatant Status Review Tribunal” (CSRT).[1] Stmt, of Randolph, J., at 1303. Section 2112(b) states: “The record to be filed in the court of appeals ... shall consist of the order sought to be reviewed or enforced, the findings or report upon which it is based, and the pleadings, evidence, and proceedings before the agency, board, commission, or officer concerned.” Accord Fed. R.App. P. 16(a). The term “agency,” in turn, “includes any department, independent establishment, commission, administration, authority, board or bureau of the United States ... unless the context shows that such term was intended to be used in a more limited sense.” 28 U.S.C. § 451. Judge Randolph asserts that § 2112(b) applies to our review pursuant to the DTA of a CSRT’s status determination because a CSRT is within a military department and a “military department is a ‘department’ under *385 § 451, and thus an ‘agency’ under § 2112(b).” Stmt, of Randolph, J., at 1303.
Section 2112(b) does not define the record on review of a CSRT proceeding because a military department is not an agency under 28 U.S.C. § 451. Several provisions of Title 28 distinguish between an “agency” and a “military department,” which necessarily implies that a military department is not an agency. See 28 U.S.C. § 530D(e) (“executive agencies and military departments”); 28 U.S.C. § 530C(b)(L)(iv) (“executive agency or military department”); 28 U.S.C. § 530D(d) (“executive agency or military department”); cf. 28 U.S.C. § 2671 (defining “[flederal agency” specifically to include “the military departments” for purposes of certain sections of Title 28 that have no bearing upon § 2112).[2]
Judge Randolph dismisses these provisions on the ground that in them the term “agency” is always modified by “executive” or “federal,” which suggests a more limited conception of “agency” there than in § 451, where it appears without modification. Stmt, of Randolph, J., at 1303. For confirmation, he points to § 2 of the Administrative Procedure Act, 5 U.S.C. § 551(1)(F), which excludes “courts martial and military commissions” from the definition of “agency” for purposes of that Act. Stmt, of Randolph, J., at 1303 & n. 3. Judge Randolph seems to believe that by defining “agency” broadly and then excluding courts martial and military commissions, the APA implies that courts martial and military commissions are agencies except where “expressly excluded”; because Title 28, unlike the APA, does not expressly exclude courts martial and military commissions from its scope, courts martial and military commissions are presumably agencies for purposes of that title, including §§ 451 and 2112.
This reasoning tells us nothing about a CSRT, however, unless a CSRT is a court martial or military commission, which it assuredly is not. See 10 U.S.C. § 802 (specifying persons subject to court martial); 10 U.S.C. § 817 (defining jurisdiction of court martial); 10 U.S.C. §§ 877-934 (enumerating substantive offenses that may be tried before a court martial); see 10 U.S.C. § 948b(f) (defining “military commission”); 10 U.S.C. § 948d(c) (distinguishing military commission from CSRT); compare DTA § 1005(e)(2) (“Review of decisions of combatant status review tribunals of propriety of detention”) with DTA § 1005(e)(3) (“Review of final decisions of military commissions”).[3] Not coming within any exclusion from the APA, therefore, a CSRT must be either an agency subject to the APA or, as I believe it is, something s« generis and outside the contemplation of the APA. If a CSRT were an agency subject to the APA, then the detainees at Guantánamo would presumably be entitled to the significant procedural rights afforded by the APA. The notion that a CSRT is *386 subject to the APA is completely inconsistent with the Congress’ understanding when, by enacting the DTA, it ratified the procedural framework for CSRTs established by the DoD Regulations. In summary, a CSRT can be structured as it is under the DoD Regulations only because it is not a court martial, not a military commission, and not an agency:[4]
It would be particularly untoward to apply § 2112(b) outside its apparent field of application — and particularly improbable the Congress so intended — when the result would be to preclude the court from discharging the review function assigned to it in the DTA. That review function is broader than Judge Randolph suggests. The DTA charges the court with reviewing not only “whether ... the conclusion of the Tribunal [was] supported by a preponderance of the evidence,” but also whether it was reached in a manner “consistent with the standards and procedures specified by the Secretary of Defense” for CSRTs. DTA § 1005(e)(2)(C).
The DoD Regulations, which establish the “standards and procedures” to be followed by the Recorder, the detainee’s Personal Representative, and the CSRTs themselves, require the Recorder to obtain all the Government Information, E-l § C(2); E-2 § C(l), to cull from the Government Information and forward to the Tribunal such information “as may be sufficient to support the detainee’s classification as an enemy combatant” together with all exculpatory information, E-l § H(4); E-2 §§ B(l), C(6), and to share all the Government Information with the detainee’s Personal Representative, E-l § F(8); E-2 § C(4). In order to review whether the Recorder performed these tasks, the court obviously must see all the Government Information.[5] See Bismullah I, 501 F.3d at 185-86; Bismullah II, 503 F.3d at 139-40. Further, the court will be able to assess whether any failure by the Recorder to perform these tasks affected the weight of the evidence before the CSRT only if the court can consider that failure in light of all the information the Recorder was supposed to collect and forward. See Bismullah I, 501 F.3d at 185-86; Bismullah II, 503 F.3d at 139-40. Irrespective, therefore, of what § 2112 might say in general about the scope of a record on review, the DTA requires that the record *387 on review of a CSRT’s status determination include all the Government Information, regardless whether it was all put before the Tribunal.
Judge Randolph lodges two pragmatic objections to this analysis. First, he argues “it is impossible for us to determine whether any particular piece of information was obtained or was not obtained by any particular Recorder in any particular detainee’s case” because “Recorders ... did not save the information they obtained unless” they forwarded it “to the Tribunal.” Stmt, of Randolph, J., at 1304. Judge Randolph is correct — which is why the panel held the Government could either “reassemble the Government Information it did collect or ... convene a new CSRT.” Bismullah II, 503 F.3d at 141-42.[6]
Second, Judge Randolph argues that “at most ... the record on review should consist only of the evidence before the Tribunal plus any exculpatory information the government has discovered.” Stmt, of Randolph, J., at 1305. Of course, the Recorder is supposed to forward all the exculpatory Government Information to the Tribunal. See E-l § H(4); E-2 §§ B(l), C(6). But the court is no more able than the CSRT itself to determine whether the Recorder withheld any exculpatory Government Information from the CSRT — unless, that is, subject to the national security limitations discussed below, counsel may see and draw the attention of the court to any arguably exculpatory Government Information the Recorder did not put before the Tribunal. See Decl. of Stephen Abraham, Lieutenant Colonel, U.S. Army Reserve ¶¶ 10-17 (June 15, 2007) (“asked to confirm and represent in a statement to be relied upon by the CSRT board members that the [originating intelligence] organizations did not possess ‘exculpatory information’ relating to [detainees who were] the subject of the CSRT, ... [I could not] reach [such] a conclusion ... without knowing that I had seen all information, [but I] was never told that the information that was provided [to me by the originating organizations] constituted all available information”).
One need not impute to the Recorder negligence much less bad faith to see that the DTA requires the court to review his adherence to the DoD Regulations. Because the DoD Regulations assign to the Recorder a central role in the CSRT process, to ignore the actions of the Recorder — and especially to ignore the evidence the Recorder did not put before the Tribunal — would render utterly meaningless judicial review intended to ensure that status determinations are made “consistent with” the DoD Regulations. DTA § 1005(e)(2)(C). Unlike the final decision rendered in a criminal or an agency proceeding, which is the product of an open and adversarial process before an independent decisionmaker, a CSRT’s status determination is the product of a necessarily closed and accusatorial process in which the detainee seeking review will have had little or no access to the evidence the Recorder presented to the Tribunal, little ability to gather his own evidence, no right to confront the witnesses against him, and no lawyer to help him prepare his case, and in which the decisionmaker is employed and chosen by the detainee’s accuser. See E-l §§ A, B, C(l), C(3), E(2), *388 E(4), F, G(2), G(8), G(9), H(7).[7] As a result, the Recorder’s failure to adhere to the DoD Regulations can influence the outcome of the proceeding to a degree that a prosecutor or an agency staff member cannot; as a practical matter, the Recorder may control the outcome. For this court to ignore that reality would be to proceed as though the Congress envisioned judicial review as a mere charade when it enacted the DTA. Thus, the analogy Judge Henderson draws between our review of status determinations under the DTA and our review of agency decisions, Stmt, of Henderson, J., at 1300-01, is inapt.
Judge Henderson’s comparison of a status determination proceeding before a CSRT to a probable cause hearing for a criminal defendant is likewise wide of the mark. She asks, “If we can determine whether the preponderance of the evidence supports a probable cause finding sufficient to hold an arrestee for trial without knowing (much less, reviewing) all the evidence in the prosecutor’s possession, can we not do so in reviewing the evidence supporting the ‘enemy combatant’ designation?” Stmt, of Henderson, J., at 1300. The critical question, however, is not whether it is possible for the court to review the determination of a CSRT based solely upon the evidence that was before the CSRT, but whether that would be the presumably meaningful review the Congress prescribed. Note also that a panoply of constitutional and statutory protections ensures that a person imprisoned after a probable cause hearing will receive a speedy trial and be convicted or released, thereby mitigating the impact of an erroneous finding of probable cause predicated upon limited and possibly one-sided evidence. In contrast, the determination of a CSRT is only a determination of the detainee’s status as an enemy combatant.[8] Thereafter, it may be that nothing prevents the Government from holding an enemy combatant “for the duration of the relevant conflict.” Hamdi v. Rumsfeld, 542 U.S. 507, 518-21, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004)[9]; see Boumediene v. *389 Bush, 476 F.3d 981, 988-94 (D.C.Cir.2007) (holding alien detained as enemy combatant at Guantánamo Bay has no constitutional right to writ of habeas corpus), cert. granted, — U.S.-, 127 S.Ct. 3078, 168 L.Ed.2d 755 (2007) (No. 06-1195).
Finally, Judge Randolph raises the concern that “sharing [the Government Information] with private counsel [will] give[] rise to a severe risk of a security breach.” Stmt, of Randolph, J., at 1305. The panel, however, accommodated, to the full extent requested by the Government, its position that certain types of Government Information cannot be disclosed to the petitioners’ counsel without jeopardizing national security. The panel “provided], just as the Government urged, that it may withhold from the petitioners’ counsel any Government Information that is either ‘highly sensitive information, or ... pertain[s] to a highly sensitive source or to anyone other than the detainee,’ ” as long as the Government makes the withheld information available to the court for review in camera. Bismullah II, 503 F.3d at 142 (quoting Bismullah I, 501 F.3d at 187). The panel also stressed that, under the DoD Regulations, “ ‘information in the possession of the U.S. Government bearing on the issue of whether the detainee meets the criteria to be designated as an enemy combatant’ comes within the definition of Government Information only if it is ‘reasonably available.’” Bismullah II, 503 F.3d at 141 (quoting E-l § E(3)); see also Bismullah I, 501 F.3d at 180, 192. And, as the panel observed, an “originating agency” may, pursuant to the DoD Regu- • lations, “decline[] to authorize [classified information] for use in the CSRT process,” presumably for reasons of national security, in which case that classified information is deemed “not reasonably available” and accordingly is not Government Information. E-l § D(2); see Bismullah II, 503 F.3d at 142-43. If these options are insufficient to safeguard national security, then the Secretary of Defense, to whom the DTA assigns responsibility for establishing the standards and procedures that govern CSRTs, may revise the DoD Regulations.
Judge Brown criticizes the panel’s “reliance” upon the term “reasonably available” because it “provides not a process-based definition, but an abstract legal standard.” Stmt, of Brown, J., at 1307. The panel, however, did not invent the “reasonably available” standard; it is a feature of the controlling DoD Regulations. Further, the “reasonably available” standard is not as open-ended as Judge Brown suggests, in important part because, as just noted, the national security agencies may withhold classified information from the Recorder, thereby rendering it “not reasonably available.”
In closing, I note that the Supreme Court, in the order granting a writ of certiorari in Boumediene, stated that “it would be of material assistance to consult any decision” reached by this court in Bis-mullah. Judge Henderson contends that “we do the Supreme Court no favor by not fully considering potentially determinative matters.” Stmt, of Henderson, J., at 1302 n. 6. After merits briefing, oral argument, an opinion by the panel (in which Judge Henderson joined), a petition for rehearing and a response thereto, the petitioners’ post-argument letter filed pursuant to FRAP 28(j) and the Government’s response thereto, and a supplemental opinion by the panel (in which Judge Henderson again joined), there can be no doubt that all the issues presented in the parties’ procedural motions have been aired and fully considered.

. Judge Randolph also implies the panel ignored the provisions of the DoD Regulations that define the "Record of Proceedings” before the CSRT, namely, E-2 § C(8) & (10). In fact, the panel not only epitomized both E-2 § C(8) and E-2 § C(I0), see Bismullah I, 501 F.3d at 182; see also Bismullah II, 503 F.3d at 139 (citing E-2 § C(8)), it expressly rejected the Government’s contention that the Record of Proceedings constitutes the record on review for reasons stated in the panel’s two opinions. See Bismullah I, 501 F.3d at 184-86; Bismullah II, 503 F.3d at 139-41.

. See W. Va. Univ. Hosps. v. Casey, 499 U.S. 83, 88-92, 100-01, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991) (holding “attorney’s fees" and “expert fees” distinct for purposes of 42 U.S.C. § 1988 because ”[i]f ... the one includes the other, dozens of statutes referring to the two separately become an inexplicable exercise in redundancy").

. Judge Randolph says 5 U.S.C. § 551 also expressly excludes "other military authorities.” Stmt, of Randolph, J., at 1303 n. 3. In fact, the exclusion is for “military authority exercised in the field in time of war or in occupied territory." 5 U.S.C. § 551(1)(G). Citing his own concurring opinion in Al Odah v. United States, 321 F.3d 1134, 1149 (D.C.Cir.2003), Judge Randolph argues a CSRT is a military authority exercised in the field in a time of war. Stmt, of Randolph, J., at 1303 n. 3. No court has ever so held and, in any event, no parly to this case has suggested as much.

. Of course, if a CSRT were a court martial or a military commission, then the detainees would be entitled to greater procedural rights than-they have under the DoD Regulations. See 10 U.S.C. §§ 830-876b (defining procedures for court martial); 10 U.S.C. §§ 948q-950j (defining procedures for military commission).

. The record before the court suggests the Recorder has not always fulfilled his obligations under the DoD Regulations. See Decl. of Stephen Abraham, Lieutenant Colonel, U.S. Army Reserve V1I5-19 (June 15, 2007) (stating "the information comprising the Government Information and the Government Evidence was not compiled personally by the CSRT Recorder;" "on a number of occasions” his request that an originating agency provide "a written statement that there was no exculpatory evidence ... [was] summarily denied;" die people "preparing materials for use by the CSRT board members did not know whether they had examined all available information or even why they possessed some pieces of information but not others;" and "the case writer or Recorder, without proper experience or a basis for giving context to information, often rejected some information arbitrarily while accepting other information without any articulable rationale"); Deck of James M. McGarrah, Rear Admiral (Ret.), U.S. Navy ¶¶ 4-6, 10-13 (May 31, 2007) (stating that after September 1, 2004 the Recorder did not "personally collect! ] the Government Information” and that the Recorder withheld from the Tribunal exculpatory Government Information if in his view it was "duplicative" or "if it did not relate to a specific allegation being made against the detainee").

. The Government is reportedly now "review[ing] ... whether to conduct new hearings” out of concern that it may not have “take[ii] everything into consideration when [it] did the original” CSRTs. William Glaberson, New Detention Hearings May Be Considered, N.Y. Times, Oct. 14, 2007 (quoting Capt. Theodore Fessel, Jr.), available at http://www.nytimes.com/2007/10/14/us/14cnd-gitmo.html.

. The detainee obviously cannot be given access to the classified portion of the Government Information. The detainee's Personal Representative, who is "neither a lawyer nor [the detainee's] advocate," E-3 § D, is not obligated to but "may share the unclassified portion of the Government Information with the detainee.” E-l § § F(8), G(8), FI(7).

. The DoD Regulations define an enemy combatant as "an individual who was part of or supporting Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners.” E-l § B; see also Hamdi v. Rumsfeld, 542 U.S. 507, 518, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004): "The purpose of detention is to prevent captured individuals from returning to the field of battle and taking up arms once again.” The Government reportedly ”hope[s] to try eventually as many as 80 of the 305 detainees at Guantánamo,” William Glaberson, Witness Names to Be Withheld From Detainee, N.Y. Times, Dec. 1, 2007, available at http://www.nytimes.com/2007/12/ 0 l/us/naüonalspecial3/01 gitmo.html, which suggests that, if the Government intends to continue holding the remaining 225 detainees, it intends to do so solely upon the basis of their status determinations.

.The Supreme Court left open the question whether the Government may subject an enemy combatant to an "indefinite or perpetual detention.” Hamdi, 542 U.S. at 521, 124 S.Ct. 2633 ("[W]e understand Congress' grant of authority for use of ‘necessary and appropriate force' to include the authority to detain for the duration of the relevant conflict, and our understanding is based on longstanding law-of-war principles. If the practical circumstances of a given conflict are entirely unlike those of the conflicts that informed the development of the law of war, that understanding may unravel. But that is not the situation we face as of this date.”) (quoting Authorization for Use of Military Force, Pub.L. No. 107-40, § 2(a), 115 Stat. 224, 224 (2001)).