KAREN LECRAFT HENDERSON, Circuit Judge,
with whom Circuit Judges SENTELLE, RANDOLPH, and KAVANAUGH join, dissenting from the denial of rehearing en banc:
The Detainee Treatment Act of 2005 (DTA) gives exclusive jurisdiction to this Court “to determine the validity of any final decision of [the] Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant.” Pub.L. No. 109-148 § 1005(e)(2)(A), 119 Stat. 2680, 2742 (Dec. 30, 2005). While the DTA is not unique in this respect, to me our exclusive jurisdiction underscores the charge given to our entire Court to hear and weigh all issues fairly encompassed in determining the validity of the CSRT’s decision. Granted, we are now only at the preliminary stage of that determination, that is, resolving procedural motions. In two respects, however, I am convinced that our entire Court should hear aiid consider the protective order which both sides have asked us to enter. Accordingly, I dissent from the en banc denial.[1]
I. The Scope of the Record on Review.
Bismullah II attempts to correct the Government’s overreading of Bisnmllah Ts description of the record on review by, first, repeating the panel’s reading of the Government Information (defined by DoD Regulation E-l § E(3)) as including only information “reasonably available” (again, specified by DoD Regulation E-l § E(3)) and, then, by concluding that “information without regard to whether it is ‘reasonably available’ is clearly not required by Bismullah I.” Bismullah II, 503 F.3d at 141. Bismullah II, however, leaves intact the panel’s original conclusion that “whether the preponderance of the evidence supported the conclusion of the Tribunal, cannot be ascertained without consideration of all the Government Information.” Id. at 140 (citing Bismullah I, 501 F.3d at 185-86.)
Why we are unable to otherwise conduct our limited review of the validity of the CSRT’s decision is left largely unexplained.[2] But in the criminal context- *391 where the protections accorded the arrestee are greater and our review is, accordingly, more searehing-our Court is plainly able to review the conduct of a preliminary hearing without knowing all the evidence the prosecution has gathered. The reason, of course, is that the preliminary hearing is limited in scope. Coleman v. Burnett, 477 F.2d 1187, 1201 (D.C.Cir.1973) (“The preliminary hearing is not a minitrial of the issue of guilt, ... ‘A preliminary hearing,’ the Supreme Court has said, ‘is ordinarily a much less searching exploration into the merits of a ease than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial.’ ” (quoting Barber v. Page, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968))). So too is the CSRT’s mission: that is, at this stage, it must decide simply whether the detainee is an enemy combatant. Only if he is one can he, presumably, then be held for trial before a military commission. If we can determine whether the preponderance of the evidence supports a probable cause finding sufficient to hold an arrestee for trial without knowing (much less, reviewing) all the evidence in the prosecutor’s possession, can we not do so in reviewing the evidence supporting the “enemy combatant” designation?[3] And should not all of us at least hear the arguments for and against, especially in the national security context? And espedally given the showing the Government has made in both its unclassified and ex parte and in camera submissions? Bismullah II, 503 F.3d at 138 n. 1.
Even if we use the administrative agency analogy instead, the Supreme Court has made clear that we have no license to “create” a record consisting of more than the agency itself had before it. Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) (“[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.”); Doraiswamy v. Sec’y of Labor, 555 F.2d 832, 839-40 (D.C.Cir.1976) (“This circumscription [that review be confined to the administrative record], which the Court has consistently honored in other cases, stems from well ingrained characteristics of the administrative process. The administrative function is statutorily committed to the agency, not the judiciary. A reviewing court is not to supplant the agency on the administrative aspects of the litigation.... The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based ....”) (internal citations, quotations and footnotes omitted); Walter O. Boswell Mem’l Hosp. v. Heckler, 749 F.2d 788, 793 (D.C.Cir.1984) (explaining that the record for the reviewing court is limited to “that information *392 before the [agency] at the time of [its] decision, ... thus excluding ex post supplementation of the record by either side.”); Mail Order Ass’n of Am. v. U.S. Postal Serv., 2 F.3d 408, 433-34 (D.C.Cir. 1993) (same). Again, should we not at least hear and weigh the arguments for and against in the national security context?
II. Detainees’ Counsel’s Access to Classified Government Information.
Bismullah II also attempts to corral the Government Information, much of which, as the Government’s submissions make clear, is classified, that must be disclosed to the detainees’ counsel by emphasizing the exceptions from disclosure for information that is “ ‘highly sensitive ... or ... pertain[s] to a highly sensitive source or to anyone other than the detainee.’ ” Bismullah II, 503 F.3d at 142 (quoting Bismullah I, 501 F.3d at 187) (alteration in original).[4] Bismullah II, however, may be unrealistically sanguine about the Government’s resulting burden if the presumption is that it must disclose all Government Information except what fits within the exceptions; according to the Government’s submissions, which, I submit, we are ill-equipped to second-guess, the exceptions swamp the disclosable information. Cf. Krikorian v. Dep’t of State, 984 F.2d 461, 464 (D.C.Cir.1993).[5] But the alternative is not necessarily limited to what Bismullah II describes, namely, “the only solution is [for the Government] to turn over none of [the Government Information].” Bismullah II, 503 F.3d at 142. If the record on review is more limited as discussed supra, the detainees’ counsel’s access likewise contracts. Again, should we not all consider this alternative?
We have heard by unclassified declarations from Michael Y. Hayden, Director of the Central Intelligence Agency; Gordon England, Deputy Secretary of the Department of Defense; Keith Alexander, Director of the National Security Agency; Robert Mueller, Director of the Federal Bureau of Investigation; and J. Michael McConnell, Director of National Intelligence. We have heard by Secret declaration from FBI Director Mueller. And we have heard ex parte and in camera by Top SeereWSCI declarations from CIA Director Hayden and NSA Director Alexander. In the unclassified declarations, the five officials — charged with safeguarding our country while we are now at war — have detailed the grave national security concerns the Bismullah I holding presents. “Without doubt, our Constitution recognizes that core strategic matters of warmaking belong in the hands of those who are best positioned and most politically accountable for making them.” Hamdi, 542 U.S. at 531, 124 S.Ct. 2633 (citing Dep’t of Navy v. Egan, 484 U.S. 518, 530, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988) (noting reluctance of courts “to intrude upon the authority of the Executive in military and national security affairs”)). In Hamdi, the Government represented that “military officers who are engaged in the serious work of waging battle [will] be *393 unnecessarily and dangerously distracted by litigation half a world away, and discovery into military operations [will] both intrude on the sensitive secrets of national defense and result in a futile search for evidence buried under the rubble of war.” Hamdi, 542 U.S. at 531-32, 124 S.Ct. 2633. The High Court agreed, declaring “[t]o the extent that these burdens are triggered by heightened procedures, they are properly taken into account.” Id. at 532, 124 S.Ct. 2633. I believe our Court should likewise take these burdens into account sitting en banc.[6] For the foregoing reasons I dissent from the denial of rehearing en banc and join Judge Randolph’s dissent.

. I note that, as a member of the panel whose original opinion issued on July 20, 2007, Bismullah v. Gates, 501 F.3d 178 (D.C.Cir.2007) (Bismullah I), and whose opinion denying the Government's petition for panel rehearing issued on October 3, 2007, Bismullah v. Gates, 503 F.3d 137 (D.C.Cir.2007) (Bismullah II), I joined both opinions. Nevertheless, as sot forth hereinbelow, matters remain that were unaddressed at the panel level — matters that may be determinative and should at least be,, heard and weighed by all of us.

. Bismullah I does note that "the court cannot, as the DTA charges us, consider whether a preponderance of the evidence supports the Tribunal's status determination without seeing all the evidence, any more than one can tell whether a fraction is more or less than one half by looking only at the numerator and *391 not at the denominator.” Bistmullah I, 501 F.3d at 186.

. A detainee is not a criminal defendant. "The capture and detention of lawful combatants and the capture, detention, and trial of unlawful combatants, by 'universal agreement and practice,' are ‘important incidentls] of war.' " Hamdi v. Rumsfeld, 542 U.S. 507, 518, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004) (quoting Ex parte Quirin, 317 U.S. 1, 28, 30, 63 S.Ct. 2, 87 L.Ed. 3 (1942)). "The purpose of detention is to prevent captured individuals from returning to the field of battle and taking up arms once again.” Id. (citing Naqvi, Doubtful Prisoner-of-War Status, 84 Int’l Rev. Red Cross 571, 572 (2002) (‘‘[C]aptivity in war is ‘neither revenge, nor punishment, but solely protective custody, the only purpose of which is to prevent the prisoners of war from further participation in the war’ " (quoting decision of Nuremberg Military Tribunal, reprinted in 41 Am. J. Int'l L. 172, 229 (1947))); W. Winthrop, Military Law and Precedents 788 (rev.2d ed. 1920) (“ ‘A prisoner of war is no convict; his imprisonment is a simple war measure’ " (citations omitted))).

. Bismullah I had "presume[d] counsel for a detainee has a ‘need to know' all Government Information concerning his client, not just the portions of the Government Information presented to the Tribunal.” Bismullah I, 501 F.3d at 187 (emphases added).

. I leave aside this Court’s likely burden if we do not consider en banc the scope of the Government Information disclosable to the detainees' counsel. As Bismullah II itself notes, "if it is true that most of the Government Information ... come[s] within an exception ..., the practical effect ... may yet be that our review ... is in large part ex parte." Bismullah II, 503 F.3d at 143 n. 7.

. I note, in granting the detainees' certiorari petition in Boumediene v. Bush, 476 F.3d 981 (D.C.Cir.2007), the Supreme Court advised that "[a]s it would be of material assistance to consult any decision in Bismullah et al. v. Gates, No. 06-1197, ... supplemental briefing will be scheduled” once our Court’s decision issues. Boumediene v. Bush, - U.S. -, 127 S.Ct. 3078, 168 L.Ed.2d 755 (2007). En banc review would plainly delay our decision and thus tighten the time frame for the supplemental briefing the Boumediene parties must submit. Nonetheless we do the Supreme Court no favor by not fully considering potentially determinative matters, including these herein discussed. Although, as Chief Judge Ginsburg lists, Stmt, of Ginsburg, C.J., at 1298, we have shuffled much paper in this case, we have yet to consider — with the benefit of briefing and oral argument — any of the issues raised by the three dissents from the en banc denial.