# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 20, 2008      Decided January 9, 2009

No. 06-1197

HAJI BISMULLAH *A/K/A* HAJI BISMILLAH, AND *A/K/A* HAJI BESMELLA,

HAJI MOHAMMAD WALI, NEXT FRIEND OF HAJI BISMULLAH, PETITIONERS

v.

ROBERT M. GATES, SECRETARY OF DEFENSE, RESPONDENT

———

No. 07-1508

ABDUSABOUR, PETITIONER

v.

ROBERT M. GATES, SECRETARY OF DEFENSE, ET AL., RESPONDENTS

———

No. 07-1523

HAMMAD, PETITIONER

2

v.

ROBERT M. GATES, SECRETARY OF DEFENSE, ET AL.,
RESPONDENTS

———

On Petition for Rehearing

———


*Gregory G. Katsas*, Assistant Attorney General, argued the cause for respondent. With him on the petition for rehearing were *Jonathan F. Cohn*, Deputy Assistant Attorney General, and *Robert M. Loeb*, *August E. Flentje*, and *Henry C. Whitaker*, Attorneys.

*Jennifer R. Cowan* argued the cause for petitioners. With her on the opposition were *John B. Missing*, *Susan Baker Manning, Sabin Willett*, and *Rheba Rutkowski.*

Before: GINSBURG, HENDERSON, and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*: The petitioners, detainees held in military custody at Guantanamo Bay, each filed a petition, pursuant to the Detainee Treatment Act (DTA), for review of the determination by a Combatant Status Review Tribunal (CSRT) that he is an "enemy combatant." The Government contends we do not have jurisdiction over the detainees' petitions because the provision of the DTA that grants us subject matter jurisdiction cannot be severed from the provision eliminating habeas corpus jurisdiction, which

the Supreme Court held unconstitutional in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008). We agree and therefore dismiss these petitions for lack of jurisdiction; the petitioners are remitted to their remedy under the habeas corpus statute, 28 U.S.C. § 2241.

## I. Background

Each detainee challenged his status determination by filing in this court a petition for review of the CSRT's decision, pursuant to DTA § 1005(e)(2), 10 U.S.C. § 801 note. In May 2007 we heard their cases together for the purpose of deciding various procedural issues, including the scope of the record on review. *See Bismullah v. Gates*, 501 F.3d 178 (2007), *reh'g denied*, 503 F.3d 137 (2007), *reh'g en banc denied*, 514 F.3d 1291 (2008). The Government petitioned for a writ of certiorari on the merits of our decision but the Supreme Court, without reaching the merits, vacated the judgment and remanded the case to us for further consideration in light of its intervening decision in *Boumediene*. *Gates v. Bismullah*, 128 S. Ct. 2960 (2008). After briefing by the parties, we reinstated our decision establishing procedures for DTA review, whereupon the Government petitioned for rehearing, arguing for the first time that, in light of *Boumediene*, we no longer have jurisdiction over petitions for review filed pursuant to the DTA. We granted rehearing to determine whether we retain jurisdiction pursuant to DTA § 1005(e)(2) to review CSRT determinations notwithstanding the Supreme Court's decision in *Boumediene*. For the reasons elaborated below, we hold we do not.

## II.   Analysis

If it is evident the Congress would not have enacted one statutory provision had it known that another provision would be held unconstitutional, then the former provision cannot be severed from the latter and the two provisions must fall together.  *See Champlin Refining Co. v. Corp. Comm'n of Okla.*, 286 U.S. 210, 234 (1932).  In this case on rehearing, the Government argues the Congress did not intend DTA § 1005(e)(2), which gave this court alone jurisdiction to review CSRT determinations, to stand apart from the section of the Military Commissions Act (MCA) that provides no court shall have jurisdiction to hear a detainee's petition for a writ of habeas corpus, *see* MCA of 2006, § 7, Pub. L. No. 109-366, 120 Stat. 2600, 2635-36 (codified at 28 U.S.C. § 2241(e)).  The provision abolishing habeas jurisdiction for Guantanamo detainees having been held unconstitutional in *Boumediene*, therefore, the Government contends DTA § 1005(e)(2) must fall as well.[*]

The detainees point out that the Supreme Court in *Boumediene* said "the DTA ... process remain[s] intact."  128 S. Ct. at 2275.  The Government responds that, read in context, the Court was merely pointing out the limited extent of its constitutional holding in that case.  We agree.  Having concluded DTA review was not a constitutionally adequate substitute for habeas corpus, the Court had reason to be as clear as possible that it was not holding the review provisions of the DTA unconstitutional.  *Id.* ("The only law we identify

---

[*] This court suggested as much, without resolving the issue, in the course of granting the Government's motion to hold a detainee's DTA petition in abeyance pending resolution of the detainee's habeas case.  *Basardh v. Gates*, 545 F.3d 1068, 1070 (2008) (registering "serious doubt about our jurisdiction" over DTA petitions).

as unconstitutional is MCA § 7 .... Accordingly, both the DTA and the CSRT process remain intact"). The question of severability was not presented, granted, or briefed and the Court had no occasion to decide it. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents").[*] In sum, the Supreme Court in *Boumediene* did not address the issue of severability and thereby left it to this court to resolve in the first instance in light of that decision.

Our task, therefore, is to determine with respect to the DTA "what Congress would have intended in light of the Court's constitutional holding" in *Boumediene*. *United States v. Booker*, 543 U.S. 220, 246 (2005) (internal quotation marks omitted). In making this determination, we "must retain those portions of the Act that are (1) constitutionally valid, (2) capable of functioning independently, and (3) consistent with Congress' basic objectives in enacting the statute." *Id.* at

---

[*] This court exercised jurisdiction over a petition filed pursuant to the DTA after *Boumediene*, *see Parhat v. Gates*, 532 F.3d 834 (2008), but "courts are not bound by a prior exercise of jurisdiction in a case where it was not questioned." *Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 597 (D.C. Cir. 2001). As to whether the judgment in *Parhat* remains res judicata despite our holding today, see CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, 18A FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 4428, at 7 ("The res judicata effects of a judgment entered by a court that lacked subject-matter jurisdiction have not been captured in any rule or clear statement of controlling policies. . . . Recent decisions [tend] more and more toward supporting res judicata. Today, it is safe to conclude that most federal-court judgments are res judicata notwithstanding a lack of subject-matter jurisdiction.").

258-59 (internal quotation marks and citations omitted). The parties do not dispute that the first and second requirements for severability are met – that is, DTA § 1005(e)(2) is constitutional and could function independently.

The question that divides the parties is whether, now that the Supreme Court has held each detainee has a constitutional right to pursue a writ of habeas corpus, the availability of judicial review pursuant to DTA § 1005(e)(2) is consistent with the basic objective of the Congress that passed that provision. We approach that question cognizant that, in order to avoid "invalidating more of [a] statute than is necessary," we are to start with a presumption in favor of severability. *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987) (internal quotation marks omitted); *Cmty. for Creative Non-Violence v. Turner*, 893 F.2d 1387, 1394 (D.C. Cir. 1990). That cautionary presumption is overcome only if we conclude the Congress would not "'still have passed' the valid sections 'had it known' about the constitutional invalidity of the other portion[] of the statute." *Booker,* 543 U.S. at 246 (quoting *Denver Area Ed. Telecomms. Consortium, Inc. v. FCC,* 518 U.S. 727, 767 (1996) (plurality opinion)).

In this case, there can be no doubt: Both the text of the relevant provisions and the enactment of successive jurisdiction-stripping provisions demonstrate clearly that the Congress would not in the DTA have given this court jurisdiction to review CSRT determinations had it known its attempt to remove the courts' jurisdiction over habeas petitions would fail.

Turning first, as we must, to the text of the statute, we see the DTA itself indicates the provisions removing habeas jurisdiction and granting jurisdiction to review status determinations were "inextricably linked in text and purpose."

*Basardh*, 545 F.3d at 1071. In DTA § 1005(e)(2), the Congress provided that this court was to have "exclusive jurisdiction" to review the determination that a detainee is an enemy combatant. The Congress carefully limited the scope of our review to determining whether the CSRT complied with procedures to be established by the Secretary of Defense and whether those procedures were lawful. DTA § 1005(e)(2)(C). Furthermore, DTA § 1005(e)(1), which was subsequently replaced by MCA § 7, eliminated the jurisdiction of all courts, including this one, over a petition for a writ of habeas corpus or any other action related to an alien's detention at Guantanamo Bay "except as provided" by the jurisdiction-granting provision of the DTA. The Congress's careful crafting of a limited mechanism for judicial review indicates the basic objective of the DTA was not to supplement habeas corpus, but rather to restrict judicial review of the Executive's detention of persons designated enemy combatants.

The response of the Congress to the Supreme Court's interpretation of § 1005(e)(1) confirms this reading of the DTA. In June 2006, the Supreme Court held the DTA did not eliminate habeas jurisdiction over pending cases. *Hamdan v. Rumsfeld*, 548 U.S. 557, 574-76 (2006). In September 2006, the Congress replaced the jurisdiction-stripping provision of the DTA with a new jurisdiction-stripping provision, MCA § 7. The new provision again removed from the courts all jurisdiction, except as provided by the DTA, to hear an enemy combatant's challenge to his detention, including – this time in no uncertain terms – jurisdiction over pending cases: This jurisdiction-stripping provision, the Congress proclaimed, "shall apply to all cases, without exception, pending on or after the date of the enactment of this Act which relate to any aspect of the detention ... of an alien detained by the United States since September 11, 2001." MCA § 7(b). The

sequence of these legislative and judicial decisions clearly indicates the Congress understood review under DTA § 1005(e)(2) to be a substitute for and not a supplement to habeas corpus and hence the exclusive means by which a detainee could contest the legality of his detention in a court.

In sum, the Congress wanted DTA review (1) to be conducted solely in this court, (2) limited in scope, and (3) to displace habeas corpus and any other action by which an alien held at Guantanamo might challenge his detention in court. Because the Court held unconstitutional the provision eliminating habeas jurisdiction, DTA § 1005(e)(2) can no longer provide jurisdiction exclusively in this court over a detainee's challenge to his detention as an enemy combatant; instead a detainee may challenge his detention in the District Court for the District of Columbia and get review of its decision in this court. Nor can DTA review now serve as a substitute – albeit more limited in scope – for habeas corpus. Therefore, DTA review, by opening an avenue of relief alongside the writ of habeas corpus, can no longer "function in a manner consistent with the intent of Congress." *Alaska Airlines,* 480 U.S. at 685 (emphasis omitted).

The detainees would draw a different lesson from the text of the statute, pointing out that the Congress did not include – though it could have done – a provision specifying that the jurisdiction-granting and jurisdiction-stripping provisions were not severable. The detainees cite no authority suggesting this is significant, and with good reason: The Congress's failure to include a non-severability clause does not create a presumption of severability, any more than the absence of a severability clause implies non-severability. *See id.* at 686 ("In the absence of a severability clause ... Congress' silence is just that – silence - and does not raise a presumption against severability"). At oral argument the

detainees contended the absence of a non-severability clause is nonetheless significant in this case because the Congress was aware its action was potentially unconstitutional. Such awareness could, just as easily, however, have prompted the Congress to include a severability clause as a non-severability clause; it did neither. As usual, therefore, congressional silence tells us nothing about the Congress's intent regarding severability. *See id.*

The enactment of successive jurisdiction-stripping provisions, in contrast, tells us quite a lot. In particular, it confirms what the text suggests: The Congress's primary objective in giving this court "exclusive jurisdiction" over an enemy combatant's challenge to his detention, DTA § 1005(e)(2), was to limit the avenues for and scope of judicial review available to detainees. *See Boumediene*, 128 S. Ct. at 2266 ("In passing the DTA Congress .... intended to create a more limited procedure [than habeas]"); *see also* Richard H. Fallon & Daniel J. Meltzer, *Habeas Corpus Jurisdiction, Substantive Rights, and the War on Terror*, 120 HARV. L. REV. 2029, 2096 (2007); Editorial, *A Case for Appeal*, WASH. POST, Sept. 26, 2006, at A20 (noting DTA was part of effort "to limit judicial supervision over detentions").

In 2004 the Court held the habeas statute, 28 U.S.C. § 2241, extended to the detainees at Guantanamo. *Rasul v. Bush*, 542 U.S. 466, 483-84 (2004). The Congress responded directly by passing the DTA, eliminating the jurisdiction of the courts over a detainee's challenge to his detention by habeas corpus or otherwise except for the newly-created and carefully delimited statutory review in this court. In *Hamdan*, however, the Court interpreted the jurisdiction-stripping provision of the DTA not to apply to pending habeas cases. 548 U.S. at 574-76. Again the Congress responded, this time making crystal clear its intent to eliminate all forms of

judicial review for enemy combatants detained at Guantanamo, including pending cases, except for the narrow substitute provided in the DTA. *See Boumediene*, 128 S. Ct. at 2243 ("If this ongoing dialogue between and among the branches of Government is to be respected, we cannot ignore that the MCA was a direct response to *Hamdan*'s holding that the DTA's jurisdiction-stripping provision had no application to pending cases"). This "dialogue" between the Court and the Congress shows that the Congress's overriding goal throughout was to limit the judicial review available to detainees. It also confirms that the jurisdiction-stripping provision of the MCA cannot be deemed severable from the jurisdiction-granting provision of the DTA merely because the two were enacted at different times. The intervening decision of the Supreme Court bridges the interval; the jurisdiction-stripping provisions of the MCA replaced those of the DTA in direct response to the Court's interpretation of the DTA.

The detainees argue that, in view of the ongoing dialogue between the Congress and the courts, the failure of the Congress to respond to *Boumediene* by repealing DTA § 1005(e)(2) indicates that continued operation of that section is consistent with congressional intent. The Congress has had only a few months in which to respond to *Boumediene*, however, and in any event, absent an extraordinary counter-indication, congressional failure to act is of no probative value. *See Bob Jones Univ. v. United States*, 461 U.S. 574, 600 (1983) ("Ordinarily, and quite appropriately, courts are slow to attribute significance to the failure of Congress to act on particular legislation"). Legislative inaction is not probative here because it is neither long-standing nor is there "'overwhelming evidence' that Congress considered and failed to act upon the 'precise issue' before the [c]ourt." *Rapanos v. United States*, 547 U.S. 715, 750 (2006); *cf. Bob*

11

*Jones Univ.*, 461 U.S. at 600-01 (finding probative Congress's inaction over a long period).  The detainees cite *Medellin v. Texas*, 129 S. Ct. 360, 361 (2008), for the proposition that a failure to respond to a decision by the Court within just a few months may be significant, but in that case the Congress also had four years to respond to the underlying decision of the International Court of Justice, *id.*  In contrast to *Medellin*, here the Congress was faced with the problem of continued DTA review for the first time last June, when the Court held the jurisdiction-stripping provision of the MCA unconstitutional.

The detainees maintain that the actual objective of the Congress was to streamline review of detainee claims; they contend that objective can be served with DTA review intact.  Although it is certainly true that the Congress intended review pursuant to the DTA to be streamlined in that it was vested in one court with no right of further appeal and was limited in scope to the issues of compliance with and the lawfulness of applicable procedures, we think it clear the legislature's primary objective was to curtail the detainees' access to judicial review by providing one form of review in lieu of habeas corpus or "any other action."  MCA § 7(a).  Even if the detainees' characterization of the Congress's objective as limited to streamlining review were correct, however, that objective would not be served by the continued operation of DTA review.

The detainees argue to the contrary that parallel forms of review generate "synergies" and "efficiencies," but that is not convincing.  Although a few detainees, including petitioner Bismullah, have chosen (at least thus far) to pursue only review under the DTA, the great majority have chosen to pursue both DTA review and a writ of habeas corpus.  Further, because review under the DTA is narrow, a habeas

proceeding will almost always be necessary to address issues that cannot be raised in the DTA proceeding. Finally, to the extent detainees proceed with both actions simultaneously, as most are now doing, it is a near certainty the proceedings will be duplicative and will greatly burden the Government's capacity to produce sensitive evidence, which is hardly consistent with the objective of streamlining review. See Decl. of Michael V. Hayden, Director, Central Intelligence Agency ¶ 13, Aug. 29, 2008, Resp't Pet. for Reh'g Addendum 60-61; Decl. of Robert S. Mueller, III, Director, Federal Bureau of Investigation ¶ 14-16, Sept. 6, 2007, Resp't Pet. for Reh'g Addendum 81. The aggregate effect of providing two simultaneous and overlapping but not congruent forms of judicial review is a less, not a more, streamlined and efficient process.

Having disposed of the detainees' "streamlining" argument, we are left with the question whether the Congress would have enacted the jurisdiction-granting provision of the DTA had the Congress known its attempt to eliminate habeas review for the detainees would be held unconstitutional. The answer is undoubtedly no. Because the basic objective of the statute was to limit the detainees' access to the courts, had the Congress known its attempts to eliminate the habeas jurisdiction of the district courts would come to naught, it would not have turned around and created an additional and largely duplicative process by which a detainee could challenge his detention in the court of appeals.

## III. Conclusion

In sum, we are confident the Congress would not have enacted DTA § 1005(e)(2) in the absence of the statutory provision banning the courts from exercising jurisdiction over a detainee's habeas petition. Because the latter provision has

been held unconstitutional, the former must also fall. Accordingly, we hold this court lacks subject matter jurisdiction over the detainees' petitions for review of their status determinations by a CSRT. The petitions are, therefore,

*Dismissed.*