## MEDELLIN *v.* TEXAS

ON APPLICATION TO RECALL AND STAY MANDATE AND FOR
STAY

No. 06–984 (08A98).   Decided August 5, 2008*

PER CURIAM.

Petitioner seeks a stay of execution on the theory that
either Congress or the Legislature of the State of Texas
might determine that actions of the International Court of
Justice (ICJ) should be given controlling weight in determin-
ing that a violation of the Vienna Convention on Consular
Relations is grounds for vacating the sentence imposed in
this suit.   Under settled principles, these possibilities are
too remote to justify an order from this Court staying the
sentence imposed by the Texas courts.   And neither the

---

*Together with No. 08–5573 (08A99), *Medellín* v. *Texas*, on application
for stay and on petition for a writ of certiorari to the Court of Criminal
Appeals of Texas, and No. 08–5574 (08A99), *In re Medellín*, on application
for stay and on petition for a writ of habeas corpus.

President nor the Governor of the State of Texas has represented to us that there is any likelihood of congressional or state legislative action.

It is up to Congress whether to implement obligations undertaken under a treaty which (like this one) does not itself have the force and effect of domestic law sufficient to set aside the judgment or the ensuing sentence, and Congress has not progressed beyond the bare introduction of a bill in the four years since the ICJ ruling and the four months since our ruling in *Medellín* v. *Texas*, 552 U. S. 491 (2008). This inaction is consistent with the President's decision in 2005 to withdraw the United States' accession to jurisdiction of the ICJ with regard to matters arising under the Convention.

The beginning premise for any stay, and indeed for the assumption that Congress or the legislature might seek to intervene in this suit, must be that petitioner's confession was obtained unlawfully. This is highly unlikely as a matter of domestic or international law. Other arguments seeking to establish that a violation of the Convention constitutes grounds for showing the invalidity of the state-court judgment, for instance because counsel was inadequate, are also insubstantial, for the reasons noted in our previous opinion. *Id.*, at 502, n. 1.

The Department of Justice of the United States is well aware of these proceedings and has not chosen to seek our intervention. Its silence is no surprise: The United States has not wavered in its position that petitioner was not prejudiced by his lack of consular access.

The application to recall and stay the mandate and for stay of execution of sentence of death, presented to JUSTICE SCALIA, and by him referred to the Court, is denied. The application for stay of execution of sentence of death, presented to JUSTICE SCALIA, and by him referred to the Court, is denied. The petition for a writ of habeas corpus is denied.

*It is so ordered.*

Justice Stevens, dissenting.

Earlier this Term, in *Medellín* v. *Texas*, 552 U. S. 491 (2008), we concluded that neither the President nor the International Court of Justice (ICJ) has the authority to require Texas to determine whether its violation of the Vienna Convention prejudiced petitioner. Although I agreed with the Court's judgment, I wrote separately to make clear my view that Texas retained the authority—and, indeed, the duty as a matter of international law—to remedy the potentially significant breach of the United States' treaty obligations identified in the President's Memorandum to the Attorney General. Because it appears that Texas has not taken action to address the serious national security and foreign policy implications of this suit, I believe we should request the views of the Solicitor General, who argued on behalf of the Executive Branch in earlier proceedings in the suit, before allowing Texas to proceed with the execution.

As I explained in my separate opinion in March, the cost to Texas of complying with the ICJ judgment "would be minimal, particularly given the remote likelihood that the violation of the Vienna Convention actually prejudiced" this petitioner. *Id.*, at 536 (opinion concurring in judgment). "On the other hand, the costs of refusing to respect the ICJ's judgment are significant. The entire Court and the President agree that breach will jeopardize the United States' 'plainly compelling' interests in 'ensuring the reciprocal observance of the Vienna Convention, protecting relations with foreign governments, and demonstrating commitment to the role of international law.'" *Id.*, at 537. Given these stakes, and given that petitioner has been under a death sentence for 14 years, waiting a short time to guarantee that the views of the Executive have been given respectful consideration is only prudent. Balancing the honor of the Nation against the modest burden of a short delay to ensure that the breach is

unavoidable convinces me that the application for a stay should be granted.

Accordingly, I respectfully dissent.

JUSTICE SOUTER, dissenting.

I joined the dissent in *Medellín* v. *Texas*, 552 U. S. 491, 538 (2008) (opinion of BREYER, J.), and invoke the rule that it is reasonable to adhere to a dissenting position throughout the Term of Court in which it was announced. See *North Carolina* v. *Pearce*, 395 U. S. 711, 744 (1969) (Harlan, J., concurring in part and dissenting in part). The only chance to apply the treaty provisions the dissent would have held presently enforceable is now through action by the other branches of the Government. A bill on the subject has been introduced in the Congress, Avena Case Implementation Act of 2008, H. R. 6481, 110th Cong., 2d Sess. (2008), and the Government has represented to the International Court of Justice it will take further steps to give effect to that court's judgment pertinent to Medellín's conviction, among others, *Request for Interpretation of the Judgment of 31 March 2004 in the Case Concerning Avena and Other Mexican Nationals (Mex.* v. *U. S.)*, 2008 I. C. J. No. 139, ¶ 37 (Order of July 16). I would therefore enter the requested stay of execution for as long as the remainder of the 2007 Term, to allow for a current statement of the views of the Solicitor General and for any congressional action that could affect the disposition of petitioner's filings. I would defer action on the petition for a writ of certiorari to the Court of Criminal Appeals of Texas, the petition for an original writ of habeas corpus, and the motion to recall and stay the mandate in *Medellín* v. *Texas, supra.*

JUSTICE GINSBURG, dissenting.

I would grant the application for a stay of execution. Before the International Court of Justice, in response to Mexico's request for provisional measures, the United States rep-

resented: "[C]ontrary to Mexico's suggestion, the United States [does] not believe that it need make no further effort to implement this Court's *Avena* Judgment, and . . . would 'continue to work to give that Judgment full effect, including in the case of Mr. Medellín.'" *Request for Interpretation of the Judgment of 31 March 2004 in the Case Concerning Avena and Other Mexican Nationals (Mex.* v. *U. S.),* 2008 I. C. J. No. 139, ¶ 37 (Order of July 16). I would invite the Solicitor General's clarification of that representation very recently made to the international tribunal. Pending receipt and consideration of the Solicitor General's response, I would defer action on Medellín's submissions.

JUSTICE BREYER, dissenting.

The International Court of Justice (ICJ) has held that a treaty that the United States has signed, namely, the Vienna Convention on Consular Relations (Vienna Convention), Apr. 24, 1963, [1970] 21 U. S. T. 77, T. I. A. S. No. 6820, does not permit execution of this defendant without a further hearing concerning whether Texas' violation of the Vienna Convention's obligation to notify the defendant of his right to consult Mexico's consul constituted harmless error. *Case Concerning Avena and Other Mexican Nationals (Mex.* v. *U. S.),* 2004 I. C. J. 61–64 (Judgt. of Mar. 31). The United States has agreed that the ICJ's judgments will have "binding force . . . between the parties and in respect of [a] particular case." United Nations Charter, Art. 59, 59 Stat. 1062, T. S. No. 993 (1945). The President of the United States has concluded that domestic courts should enforce this particular ICJ judgment. Memorandum to the Attorney General (Feb. 28, 2005), App. to Pet. for Cert. in No. 06–984, p. 187a.

In *Medellín* v. *Texas,* 552 U. S. 491 (2008) (6-to-3 vote), this Court, while recognizing that the United States was bound by treaty to follow the ICJ's determination as a matter of *international* law, held that that determination did not *automatically* bind the courts of the United States as a matter

of *domestic law* in the absence of further congressional legislation. *Id.*, at 504–519. In reaching this conclusion the majority, as well as the dissent, recognized that, without the further hearing that the ICJ found necessary, the execution would violate our international treaty commitments. See *id.*, at 504; *id.*, at 538–540 (opinion of BREYER, J.).

Petitioner, who is scheduled to be executed this evening, now asks us to delay the execution in order to give Congress an opportunity to act to cure the legal defect that the Court found in *Medellín*. In my view, several factors counsel in favor of delay. *First,* since this Court handed down *Medellín,* Mexico has returned to the ICJ requesting this Nation's compliance with its international obligations; and the ICJ has asked that the United States "take all measures necessary to ensure that [the Mexican nationals] are not executed" unless and until they "receive review and reconsideration consistent" with the ICJ's earlier *Avena* decision. See *Request for Interpretation of the Judgment of 31 March 2004 in the Case Concerning Avena and Other Mexican Nationals (Mex.* v. *U. S.),* 2008 I. C. J. No. 139, ¶ 80 (Order of July 16).

*Second,* legislation has been introduced in Congress seeking to provide the legislative approval necessary to transform our international legal obligations into binding domestic law. See Avena Case Implementation Act of 2008, H. R. 6481, 110th Cong., 2d Sess. (2008) (referred to committee, July 14, 2008).

*Third,* prior to *Medellín,* Congress may not have understood the legal need for further legislation of this kind. That fact, along with the approaching election, means that more than a few days or weeks are likely necessary for Congress to determine whether to enact the proposed legislation.

*Fourth,* to permit this execution to proceed forthwith places the United States irremediably in violation of international law and breaks our treaty promises.

*Fifth,* the President of the United States has emphasized the importance of carrying out our treaty-based obligations in this case; this fact, along with the President's responsibility for foreign affairs, makes the Executive's views of the matter pertinent.

*Sixth,* different Members of this Court seem to have very different views of what this case is about. In my view, the issue in this suit—what the majority describes as the "beginning premise"—is not whether a confession was unlawfully obtained from petitioner. Cf. *ante,* at 760. Rather, the question before us is whether the United States will carry out its international legal obligation to enforce the decision of the ICJ. That decision requires a further hearing to determine whether a conceded violation of the Vienna Convention (Texas' failure to inform petitioner of his rights under the Vienna Convention) was or was not harmless. Nor do I believe the majority is correct insofar as it implies that Congress has had *four years to consider the matter.* See *ibid.* ("Congress has not progressed beyond the bare introduction of a bill in the four years since the ICJ ruling and the four months since our ruling in *Medellín* v. *Texas*"). To the contrary, until this Court's decision in *Medellín* a few months ago, a Member of Congress might reasonably have believed there was no need for legislation because the relevant treaty provisions were self-executing. It is not realistic to believe Congress could act to provide the necessary legislative approval in only a few weeks' time.

In my view, we should seek the views of the Solicitor General (which may well clarify these matters), and we should grant a stay of sufficient length for careful consideration of those views, along with the other briefs and materials filed in this suit. A sufficient number of Justices having voted to secure those views (four), it is particularly disappointing that no Member of the majority has proved willing to provide a courtesy vote for a stay so that we can consider the Solicitor General's view once received. As it is, the request will be

mooted by petitioner's execution, which execution, as I have said, will place this Nation in violation of international law.

For the reasons set forth, I respectfully dissent.