Cite as: 554 U. S. ____ (2008) 1

 Per Curiam

SUPREME COURT OF THE UNITED STATES
 _________________

 Nos. 06–984 (08A98), 08–5573 (08A99), and 08–5574 (08A99)
 _________________

 JOSE ERNESTO MEDELLIN
06–984 (08A98) v.
 TEXAS
 ON APPLICATION TO RECALL AND STAY MANDATE AND FOR
 STAY

 JOSE ERNESTO MEDELLIN
08–5573 (08A99) v.
 TEXAS
 ON APPLICATION FOR STAY AND PETITION FOR A WRIT OF
 CERTIORARI TO THE COURT OF CRIMINAL APPEALS OF
 TEXAS

 IN RE JOSE ERNESTO MEDELLIN
08–5574 (08A99)
ON APPLICATION FOR STAY AND ON PETITION FOR A WRIT OF
 HABEAS CORPUS

 [August 5, 2008]

 PER CURIAM.
 Petitioner seeks a stay of execution on the theory that
either Congress or the Legislature of the State of Texas
might determine that actions of the International Court of
Justice (ICJ) should be given controlling weight in deter-
mining that a violation of the Vienna Convention on Con-
sular Relations is grounds for vacating the sentence im-
posed in this suit. Under settled principles, these
possibilities are too remote to justify an order from this
Court staying the sentence imposed by the Texas courts.
And neither the President nor the Governor of the State of
Texas has represented to us that there is any likelihood of
2 MEDELLIN v. TEXAS

 Per Curiam

congressional or state legislative action.
 It is up to Congress whether to implement obligations
undertaken under a treaty which (like this one) does not
itself have the force and effect of domestic law sufficient to
set aside the judgment or the ensuing sentence, and Con-
gress has not progressed beyond the bare introduction of a
bill in the four years since the ICJ ruling and the four
months since our ruling in Medellín v. Texas, 552 U. S. ___
(2008). This inaction is consistent with the President’s
decision in 2005 to withdraw the United States’ accession
to jurisdiction of the ICJ with regard to matters arising
under the Convention.
 The beginning premise for any stay, and indeed for the
assumption that Congress or the legislature might seek to
intervene in this suit, must be that petitioner’s confession
was obtained unlawfully. This is highly unlikely as a
matter of domestic or international law. Other arguments
seeking to establish that a violation of the Convention
constitutes grounds for showing the invalidity of the state
court judgment, for instance because counsel was inade-
quate, are also insubstantial, for the reasons noted in our
previous opinion. Id., at ___ (slip op., at 5).
 The Department of Justice of the United States is well
aware of these proceedings and has not chosen to seek our
intervention. Its silence is no surprise: The United States
has not wavered in its position that petitioner was not
prejudiced by his lack of consular access.
 The application to recall and stay the mandate and for
stay of execution of sentence of death, presented to
JUSTICE SCALIA, and by him referred to the Court, is
denied. The application for stay of execution of sentence of
death, presented to JUSTICE SCALIA, and by him referred
to the Court, is denied. The petition for a writ of habeas
corpus is denied.
 It is so ordered.
 Cite as: 554 U. S. ____ (2008) 1

 STEVENS, J., dissenting

SUPREME COURT OF THE UNITED STATES
 _________________

 Nos. 06–984 (08A98), 08–5573 (08A99), and 08–5574 (08A99)
 _________________

 JOSE ERNESTO MEDELLIN
06–984 (08A98) v.
 TEXAS
 ON APPLICATION TO RECALL AND STAY MANDATE AND FOR
 STAY

 JOSE ERNESTO MEDELLIN
08–5573 (08A99) v.
 TEXAS
 ON APPLICATION FOR STAY AND PETITION FOR A WRIT OF
 CERTIORARI TO THE COURT OF CRIMINAL APPEALS OF
 TEXAS

 IN RE JOSE ERNESTO MEDELLIN
08–5574 (08A99)
ON APPLICATION FOR STAY AND ON PETITION FOR A WRIT OF
 HABEAS CORPUS

 [August 5, 2008]

 JUSTICE STEVENS, dissenting.
 Earlier this Term, in Medellín v. Texas, 552 U. S. ___
(2008), we concluded that neither the President nor the
International Court of Justice (ICJ) has the authority to
require Texas to determine whether its violation of the
Vienna Convention prejudiced petitioner. Although I
agreed with the Court’s judgment, I wrote separately to
make clear my view that Texas retained the authority—
and, indeed, the duty as a matter of international law—to
remedy the potentially significant breach of the United
States’ treaty obligations identified in the President’s
Memorandum to the Attorney General. Because it ap-
2 MEDELLIN v. TEXAS

 STEVENS, J., dissenting

pears that Texas has not taken action to address the
serious national security and foreign policy implications of
this suit, I believe we should request the views of the
Solicitor General, who argued on behalf of the Executive
Branch in earlier proceedings in the suit, before allowing
Texas to proceed with the execution.
 As I explained in my separate opinion in March, the cost
to Texas of complying with the ICJ judgment “would be
minimal, particularly given the remote likelihood that the
violation of the Vienna Convention actually prejudiced”
this petitioner. 552 U. S., at ___ (slip op., at 5) (STEVENS,
J., concurring in judgment). “On the other hand, the costs
of refusing to respect the ICJ’s judgment are significant.
The entire Court and the President agree that breach will
jeopardize the United States’ ‘plainly compelling’ interests
in ‘ensuring the reciprocal observance of the Vienna Con-
vention, protecting relations with foreign governments,
and demonstrating commitment to the role of interna-
tional law.’ ” Ibid. Given these stakes, and given that
petitioner has been under a death sentence for 14 years,
waiting a short time to guarantee that the views of the
Executive have been given respectful consideration is only
prudent. Balancing the honor of the Nation against the
modest burden of a short delay to ensure that the breach
is unavoidable convinces me that the application for a stay
should be granted.
 Accordingly, I respectfully dissent.
 Cite as: 554 U. S. ____ (2008) 1

 SOUTER, J., dissenting

SUPREME COURT OF THE UNITED STATES
 _________________

 Nos. 06–984 (08A98), 08–5573 (08A99), and 08–5574 (08A99)
 _________________

 JOSE ERNESTO MEDELLIN
06–984 (08A98) v.
 TEXAS
 ON APPLICATION TO RECALL AND STAY MANDATE AND FOR
 STAY

 JOSE ERNESTO MEDELLIN
08–5573 (08A99) v.
 TEXAS
 ON APPLICATION FOR STAY AND PETITION FOR A WRIT OF
 CERTIORARI TO THE COURT OF CRIMINAL APPEALS OF
 TEXAS

 IN RE JOSE ERNESTO MEDELLIN
08–5574 (08A99)
ON APPLICATION FOR STAY AND ON PETITION FOR A WRIT OF
 HABEAS CORPUS

 [August 5, 2008]

 JUSTICE SOUTER, dissenting.
 I joined the dissent in Medellín v. Texas, 552 U. S. —, —
(2008) (BREYER, J., dissenting), and invoke the rule that it
is reasonable to adhere to a dissenting position throughout
the Term of Court in which it was announced. See North
Carolina v. Pearce, 395 U. S. 711, 744 (1969) (Harlan, J.,
concurring in part and dissenting in part). The only
chance to apply the treaty provisions the dissent would
have held presently enforceable is now through action by
the other branches of the Government. A bill on the sub-
ject has been introduced in the Congress, Avena Case
Implementation Act of 2008, H. R. 6481, 110th Cong., 2d
2 MEDELLIN v. TEXAS

 SOUTER, J., dissenting

Sess. (2008), and the Government has represented to the
International Court of Justice it will take further steps to
give effect to that court’s judgment pertinent to Medellín’s
conviction, among others, Request for Interpretation of the
Judgment of 31 March 2004 in the Case Concerning Avena
and Other Mexican Nationals (Mex. v. U. S.), 2008 I. C. J.
No. 139, ¶ 37 (Order of July 16). I would therefore enter
the requested stay of execution for as long as the remain-
der of the 2007 Term, to allow for a current statement of
the views of the Solicitor General and for any congres-
sional action that could affect the disposition of peti-
tioner’s filings. I would defer action on the petition for a
writ of certiorari to the Court of Criminal Appeals of
Texas, the petition for an original writ of habeas corpus,
and the motion to recall and stay the mandate in Medellín
v. Texas, supra.
 Cite as: 554 U. S. ____ (2008) 1

 GINSBURG, J., dissenting

SUPREME COURT OF THE UNITED STATES
 _________________

 Nos. 06–984 (08A98), 08–5573 (08A99), and 08–5574 (08A99)
 _________________

 JOSE ERNESTO MEDELLIN
06–984 (08A98) v.
 TEXAS
 ON APPLICATION TO RECALL AND STAY MANDATE AND FOR
 STAY

 JOSE ERNESTO MEDELLIN
08–5573 (08A99) v.
 TEXAS
 ON APPLICATION FOR STAY AND PETITION FOR A WRIT OF
 CERTIORARI TO THE COURT OF CRIMINAL APPEALS OF
 TEXAS

 IN RE JOSE ERNESTO MEDELLIN
08–5574 (08A99)
ON APPLICATION FOR STAY AND ON PETITION FOR A WRIT OF
 HABEAS CORPUS

 [August 5, 2008]

 JUSTICE GINSBURG, dissenting.
 I would grant the application for a stay of execution.
Before the International Court of Justice, in response to
Mexico’s request for provisional measures, the United
States represented: “[C]ontrary to Mexico’s suggestion, the
United States [does] not believe that it need make no
further effort to implement this Court’s Avena Judgment,
and . . . would ‘continue to work to give that Judgment full
effect, including in the case of Mr. Medellín.’ ” Request for
Interpretation of the Judgment of 31 March 2004 in the
Case Concerning Avena and Other Mexican Nationals
(Mex. v. U. S.), 2008 I. C. J. No. 139, ¶ 37 (Order of July
2 MEDELLIN v. TEXAS

 GINSBURG, J., dissenting

16). I would invite the Solicitor General’s clarification of
that representation very recently made to the interna-
tional tribunal. Pending receipt and consideration of the
Solicitor General’s response, I would defer action on
Medellín’s submissions.
 Cite as: 554 U. S. ____ (2008) 1

 BREYER, J., dissenting

SUPREME COURT OF THE UNITED STATES
 _________________

 Nos. 06–984 (08A98), 08–5573 (08A99), and 08–5574 (08A99)
 _________________

 JOSE ERNESTO MEDELLIN
06–984 (08A98) v.
 TEXAS
 ON APPLICATION TO RECALL AND STAY MANDATE AND FOR
 STAY

 JOSE ERNESTO MEDELLIN
08–5573 (08A99) v.
 TEXAS
 ON APPLICATION FOR STAY AND PETITION FOR A WRIT OF
 CERTIORARI TO THE COURT OF CRIMINAL APPEALS OF
 TEXAS

 IN RE JOSE ERNESTO MEDELLIN
08–5574 (08A99)
ON APPLICATION FOR STAY AND ON PETITION FOR A WRIT OF
 HABEAS CORPUS

 [August 5, 2008]

 JUSTICE BREYER, dissenting.
 The International Court of Justice (ICJ) has held that a
treaty that the United States has signed, namely, the
Vienna Convention on Consular Relations (Vienna Con-
vention), Apr. 24, 1963, [1970] 21 U. S. T. 77, T. I. A. S.
No. 6820, does not permit execution of this defendant
without a further hearing concerning whether Texas’
violation of the Vienna Convention’s obligation to notify
the defendant of his right to consult Mexico’s consul con-
stituted harmless error. Case Concerning Avena and
Other Mexican Nationals (Mex. v. U. S.), 2004 I. C. J. 61-
64 (Judgment of Mar. 31). The United States has agreed
2 MEDELLIN v. TEXAS

 BREYER, J., dissenting

that the ICJ’s judgments will have “binding force . . .
between the parties and in respect of [a] particular case.”
United Nations Charter, Art. 59, 59 Stat. 1062, T. S. No.
993 (1945). The President of the United States has con-
cluded that domestic courts should enforce this particular
ICJ judgment. Memorandum to the Attorney General
(Feb. 28, 2005), App. to Pet. for Cert. in Medellín v. Texas,
No. 06–984, p. 187a.
 In Medellín v. Texas, 552 U. S. ___ (2008) (six to three
vote), this Court, while recognizing that the United States
was bound by treaty to follow the ICJ’s determination as a
matter of international law, held that that determination
did not automatically bind the courts of the United States
as a matter of domestic law in the absence of further
congressional legislation. Id., at ___. In reaching this
conclusion the majority, as well as the dissent, recognized
that, without the further hearing that the ICJ found nec-
essary, the execution would violate our international
treaty commitments. See id., at ___.
 Petitioner, who is scheduled to be executed this evening,
now asks us to delay the execution in order to give Con-
gress an opportunity to act to cure the legal defect that the
Court found in Medellín. In my view, several factors
counsel in favor of delay. First, since this Court handed
down Medellín, Mexico has returned to the ICJ requesting
this Nation’s compliance with its international obligations;
and the ICJ has asked that the United States “take all
measures necessary to ensure that [the Mexican nation-
als] are not executed” unless and until they “receive re-
view and reconsideration consistent” with the ICJ’s earlier
Avena decision. See Request for Interpretation of the
Judgment of 31 March 2004 in the Case Concerning Avena
and Other Mexican Nationals (Mex. v. U. S.), 2008 I. C. J.
No. 139, ¶80 (Order of July 16).
 Second, legislation has been introduced in Congress
seeking to provide the legislative approval necessary to
 Cite as: 554 U. S. ____ (2008) 3

 BREYER, J., dissenting

transform our international legal obligations into binding
domestic law. See Avena Case Implementation Act of
2008, H. R. 6481, 110th Cong., 2d Sess. (2008) (referred to
committee, July 14, 2008).
 Third, prior to Medellín, Congress may not have under-
stood the legal need for further legislation of this kind.
That fact, along with the approaching election, means that
more than a few days or weeks are likely necessary for
Congress to determine whether to enact the proposed
legislation.
 Fourth, to permit this execution to proceed forthwith
places the United States irremediably in violation of in-
ternational law and breaks our treaty promises.
 Fifth, the President of the United States has empha-
sized the importance of carrying out our treaty-based
obligations in this case; this fact, along with the Presi-
dent’s responsibility for foreign affairs, makes the Execu-
tive’s views of the matter pertinent.
 Sixth, different Members of this Court seem to have
very different views of what this case is about. In my
view, the issue in this suit—what the majority describe as
the “beginning premise”—is not whether a confession was
unlawfully obtained from petitioner. Cf. ante, at .
Rather, the question before us is whether the United
States will carry out its international legal obligation to
enforce the decision of the ICJ. That decision requires a
further hearing to determine whether a conceded violation
of the Vienna Convention (Texas’ failure to inform peti-
tioner of his rights under the Vienna Convention) was or
was not harmless. Nor do I believe the majority is correct
insofar as it implies that Congress has had four years to
consider the matter. See ibid. (“Congress has not pro-
gressed beyond the bare introduction of a bill in the four
years since the ICJ ruling and the four months since our
ruling in Medellín v. Texas”). To the contrary, until this
Court's decision in Medellín a few months ago, a member
4 MEDELLIN v. TEXAS

 BREYER, J., dissenting

of Congress might reasonably have believed there was no
need for legislation because the relevant treaty provisions
were self-executing. It is not realistic to believe Congress
could act to provide the necessary legislative approval in
only a few weeks’ time.
 In my view, we should seek the views of the Solicitor
General (which may well clarify these matters), and we
should grant a stay of sufficient length for careful consid-
eration of those views, along with the other briefs and
materials filed in this suit. A sufficient number of Justices
having voted to secure those views (four), it is particularly
disappointing that no Member of the majority has proved
willing to provide a courtesy vote for a stay so that we can
consider the Solicitor General’s view once received. As it
is, the request will be mooted by petitioner’s execution,
which execution, as I have said, will place this Nation in
violation of international law.
 For the reasons set forth, I respectfully dissent.