IN THE COURT OF CRIMINAL APPEALS


OF TEXAS


 




NO. WR-41,743-03






EX PARTE HUMBERTO LEAL, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


IN CAUSE NO. 1994-CR-4696-W3 IN THE 186TH


DISTRICT COURT BEXAR COUNTY





 Price, J., filed a concurring statement in which Johnson and Alcala, JJ.,
joined.



CONCURRING STATEMENT



 There is no dispute that allowing the applicant's execution to go forward without first
affording him a hearing in satisfaction of the International Court of Justice's judgment in the
Avena case, (1) would violate the United States's treaty obligations under the Vienna
Convention on Consular Relations, (2) the Optional Protocol, (3) and Article 94 of the United
Nations Charter (4)--obligations that are binding on Texas by way of the Supremacy Clause
of the United States Constitution. (5) The United States Supreme Court has acknowledged as
much, while holding that the various treaty provisions that bind the United States to comply
with an ICJ decision are not self-executing, and thus require legislation for their
implementation. (6) To date, no such legislation has passed. Lamentably, the applicant finds
himself in possession of an apparent right under international law without an actual remedy
under domestic law. (7)

 To satisfy the requirements of Article 11.071, Section 5(a)(1), (8) justifying a subsequent
application for writ of habeas corpus and a stay of execution, the applicant invokes proposed
legislation that was introduced two weeks ago in Congress that would obligate the federal
courts (but not state courts) to conduct the kind of hearing that the Avena case mandates
before he may be executed consistent with our treaty obligations. Though this is apparently
the third time implementing legislation has been introduced in Congress, the applicant's
experts assure us that the current bill enjoys widespread bipartisan support as well as the
support of the Executive Branch. Even so, the legislative process being what it is, the bill
is not likely to pass until the end of this calendar year at the earliest. I agree with the Court
that pending legislation constitutes neither new law nor new facts--at least not new facts
entitling the applicant to relief--in contemplation of Article 11.071, Section 5(a)(1).

 The applicant asks us, alternatively, to treat his application as an original writ
application, unhindered by the restraints of Article 11.071. But the application seeks relief
from a capital conviction and/or punishment, and it is my understanding that "Article 11.071
presently provides the exclusive procedure for the exercise of this Court's original habeas
jurisdiction when the applicant seeks relief from a judgment imposing a penalty of death." (9) 
Nor does the nascent legislation create a compelling enough reason to reopen the applicant's
initial writ application, as we did in Ex parte Moreno. (10) In my view, the applicant currently
lacks a basis for a remedy in our state courts in Texas.

 This does not mean he lacks any state remedy at all. The Executive Department has
the power, unfettered as ours is, to grant the applicant a reprieve. (11) And it is precisely when
the Judicial Department proves institutionally unequal to the task that the exercise of
executive clemency is most appropriate. With the recommendation of the Board of Pardons
and Paroles, the Governor may effectively stay the applicant's execution until such time as
legislation passes that finally implements our indisputable treaty obligations and provides a
remedy for the applicant's right under international law. (12) By himself, the Governor can
grant one thirty-day reprieve, affording the trial court an opportunity to delay re-imposition
of sentence until such time as implementing legislation may pass. (13) In this way, Texas can
still honor its duty under the Supremacy Clause to honor the treaty obligations of the United
States, just as Justice Stevens has implored us to do. (14)

 With these comments, I regretfully concur in the Court's order.

FILED: June 27, 2011

DO NOT PUBLISH
1. Case Concerning Avena and Other Mexican Nationals (Mex. v. U.S.), 2004 I.C.J. 128 (Mar.
31).
2. Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261.
3. Optional Protocol Concerning the Compulsory Settlement of Disputes, Apr. 18, 1961, Art.I,
21 U.S.T. 326, T.I.A.S. No. 6820.
4. U. N. Charter art. 94, para. 1.
5. U. S. Const. art. VI, cl. 2.
6. 552 U.S. 491 (2008).
7. See Medellin v. Texas, 554 U.S. 759, 763-64 (2008) (Breyer, J., dissenting) (observing that,
in earlier Medellin opinion, "this Court, while recognizing that the United States was bound by treaty
to follow the ICJ's determination as a matter of international law, held that that determination did
not automatically bind the courts of the United States as a matter of domestic law.").
8. Tex. Code Crim. Proc. art. 11.071, § 5(a)(1).
9. Ex parte Alba, 256 S.W.3d 682, 698 (Tex. Crim. App. 2008) (Price, J., dissenting).
10. 245 S.W.3d 419, 428-29 (Tex. Crim. App. 2008).
11. Tex. Const. art. 4, § 11.
12. Id.
13. Id.
14. See Medellin v. Texas, supra, at 536 (Stevens, J., concurring) ("One consequence of our
form of government is that sometimes States must shoulder the primary responsibility for protecting
the honor and integrity of the Nation. Texas' duty in this respect is all the greater since it was Texas
that--by failing to provide consular notice in accordance with the Vienna Convention--ensnared
the United States in the current controversy.").