# SUPREME COURT OF THE UNITED STATES

———————

Nos. 11–5001 (11A1), 11–5002 (11A2), and 11–5081 (11A21)

———————

HUMBERTO LEAL GARCIA, AKA HUMBERTO LEAL
11–5001 (11A1)                 *v.*
TEXAS

ON APPLICATION FOR STAY AND ON PETITION FOR WRIT OF
CERTIORARI TO THE COURT OF CRIMINAL APPEALS OF TEXAS

IN RE HUMBERTO LEAL GARCIA
11–5002 (11A2)

ON APPLICATION FOR STAY AND ON PETITION FOR WRIT OF
HABEAS CORPUS

HUMBERTO LEAL GARCIA
11–5081 (11A21)                 *v.*
RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS
DIVISION

ON APPLICATION FOR STAY AND ON PETITION FOR WRIT OF
CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE FIFTH CIRCUIT

[July 7, 2011]

PER CURIAM.

Petitioner Humberto Leal Garcia (Leal) is a Mexican
national who has lived in the United States since before
the age of two. In 1994, he kidnaped 16-year-old Adria
Sauceda, raped her with a large stick, and bludgeoned her
to death with a piece of asphalt. He was convicted of mur-
der and sentenced to death by a Texas court. He now
seeks a stay of execution on the ground that his conviction
was obtained in violation of the Vienna Convention on
Consular Relations (Vienna Convention), Apr. 24, 1963, 21
U. S. T. 77, T. I. A. S. No. 6820. He relies on *Case Con-*

*cerning Avena and Other Mexican Nationals (Mex.* v. *U. S.)*, 2004 I. C. J. 12 (Judgment of Mar. 31), in which the International Court of Justice (ICJ) held that the United States had violated the Vienna Convention by failing to notify him of his right to consular assistance. His argument is foreclosed by *Medellín* v. *Texas*, 552 U. S. 491 (2008) *(Medellín I)*, in which we held that neither the *Avena* decision nor the President's Memorandum purporting to implement that decision constituted directly enforceable federal law. 552 U. S., at 498–499.

Leal and the United States ask us to stay the execution so that Congress may consider whether to enact legislation implementing the *Avena* decision. Leal contends that the Due Process Clause prohibits Texas from executing him while such legislation is under consideration. This argument is meritless. The Due Process Clause does not prohibit a State from carrying out a lawful judgment in light of unenacted legislation that might someday authorize a collateral attack on that judgment.

The United States does not endorse Leal's due process claim. Instead, it asks us to stay the execution until January 2012 in support of our "future jurisdiction to review the judgment in a proceeding" under this yet-to-be-enacted legislation. Brief for United States as *Amicus Curiae* 2–3, n. 1. It relies on the fact that on June 14, 2011, Senator Patrick Leahy introduced implementing legislation in the Senate with the Executive Branch's support. No implementing legislation has been introduced in the House.

We reject this suggestion. First, we are doubtful that it is ever appropriate to stay a lower court judgment in light of unenacted legislation. Our task is to rule on what the law is, not what it might eventually be. In light of *Medellín I*, it is clear that there is no "fair prospect that a majority of the Court will conclude that the decision below was erroneous," *O'Brien* v. *O'Laughlin*, 557 U. S. ___, ___

(2009) (slip op., at 2) (BREYER, J., in chambers), and our task should be at an end. Neither the United States nor JUSTICE BREYER, *post*, at 1–6 (dissenting opinion), cites a single instance in this Court's history in which a stay issued under analogous circumstances.

Even if there were circumstances under which a stay could issue in light of proposed legislation, this case would not present them. Medellín himself sought a stay of execution on the ground that Congress might enact implementing legislation. We denied his stay application, explaining that "Congress has not progressed beyond the bare introduction of a bill in the four years since the ICJ ruling and the four months since our ruling in *[Medellín I]*." *Medellín* v. *Texas*, 554 U. S. 759, 760 (2008) *(per curiam) (Medellín II)*. It has now been seven years since the ICJ ruling and three years since our decision in *Medellín I*, making a stay based on the bare introduction of a bill in a single house of Congress even less justified. If a statute implementing *Avena* had genuinely been a priority for the political branches, it would have been enacted by now.

The United States and JUSTICE BREYER complain of the grave international consequences that will follow from Leal's execution. *Post*, at 4. Congress evidently did not find these consequences sufficiently grave to prompt its enactment of implementing legislation, and we will follow the law as written by Congress. We have no authority to stay an execution in light of an "appeal of the President," *post*, at 6, presenting free-ranging assertions of foreign policy consequences, when those assertions come unaccompanied by a persuasive legal claim.

Finally, we noted in *Medellín II* that "[t]he beginning premise for any stay . . . must be that petitioner's confession was obtained unlawfully," and that "[t]he United States has not wavered in its position that petitioner was not prejudiced by his lack of consular access." 554 U. S.,

at 760. Here, the United States studiously refuses to argue that Leal was prejudiced by the Vienna Convention violation, contending instead that the Court should issue a stay simply in light of the possibility that Leal might be able to bring a Vienna Convention claim in federal court, regardless of whether his conviction will be found to be invalid. We decline to follow the United States' suggestion of granting a stay to allow Leal to bring a claim based on hypothetical legislation when it cannot even bring itself to say that his attempt to overturn his conviction has any prospect of success. We may note that in a portion of its opinion vacated by the Fifth Circuit on procedural grounds, the District Court found that any violation of the Vienna Convention would have been harmless. *Leal* v. *Quarterman*, 2007 WL 4521519, *7 (WD Tex.), vacated in part *sub nom. Leal Garcia* v. *Quarterman*, 573 F. 3d 214, 224–225 (2009).

The applications for stay of execution presented to JUSTICE SCALIA and by him referred to the Court are denied. The petition for a writ of habeas corpus is denied.*

*It is so ordered.*

---

* The United States' motion for leave to file an *amicus* brief is granted.

# SUPREME COURT OF THE UNITED STATES
_____

Nos. 11–5001 (11A1), 11–5002 (11A2), and 11–5081 (11A21)
_____

HUMBERTO LEAL GARCIA, AKA HUMBERTO LEAL
11–5001 (11A1)          *v.*
TEXAS

ON APPLICATION FOR STAY AND ON PETITION FOR WRIT OF
CERTIORARI TO THE COURT OF CRIMINAL APPEALS OF TEXAS

IN RE HUMBERTO LEAL GARCIA
11–5002 (11A2)

ON APPLICATION FOR STAY AND ON PETITION FOR WRIT OF
HABEAS CORPUS

HUMBERTO LEAL GARCIA
11–5081 (11A21)          *v.*
RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS
DIVISION

ON APPLICATION FOR STAY AND ON PETITION FOR WRIT OF
CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE FIFTH CIRCUIT

[July 7, 2011]

JUSTICE BREYER, with whom JUSTICE GINSBURG, JUS-
TICE SOTOMAYOR, and JUSTICE KAGAN join, dissenting.

The petitioner, Humberto Leal Garcia (Leal), convicted
16 years ago of capital murder, is scheduled to be executed
this evening. He asks this Court to stay his execution
pending resolution of his petitions for writs of certiorari
and habeas corpus. I would grant the applications and
stay the execution.

As the Solicitor General points out, Leal's execution at
this time "would place the United States in irreparable
breach" of its "obligation[s]" under international law.

Brief for United States as *Amicus Curiae* 1 (hereinafter U. S. Brief); see also *id.,* at 11–13, 26, 30. The United States has signed and ratified the Vienna Convention, a treaty under which the United States has promised, among other things, to inform an arrested foreign national, such as Leal, that he has a right to request the assistance of his country's consulate. Vienna Convention on Consular Relations (Vienna Convention), Art. 36, Apr. 24, 1963, 21 U. S. T. 77, 100–101, T. I. A. S. No. 6820. The United States has also signed and ratified an optional protocol, a treaty in which the United States agrees that "[d]isputes arising out of the interpretation of application of the Convention shall lie within the compulsory jurisdiction of the International Court of Justice." Optional Protocol Concerning the Compulsory Settlement of Disputes (Optional Protocol), Art. I, Apr. 24, 1963, 21 U. S. T. 325, 326, T. I. A. S. No. 6820. Although the United States has since given notice of withdrawal from the Optional Protocol, see Letter from Condoleezza Rice, Secretary of State, to Kofi A. Annan, Secretary-General of the United Nations (Mar. 7, 2005), that withdrawal does not alter the binding status of its prewithdrawal obligations, see U. S. Brief 22, n. 4.

When officials of the State of Texas arrested Leal, they failed to inform him of his Vienna Convention rights, thereby placing the United States in violation of its obligations under that Convention. And so far neither Texas nor any other judicial authority has implemented what the International Court of Justice found (in a related case brought by the Government of Mexico) to be the proper remedy for that Convention violation, namely a hearing to determine whether that violation amounted in effect to harmless error. *Case Concerning Avena and Other Mexican Nationals (Mex.* v. *U. S.),* 2004 I. C. J. 12, 61–64. See also U. S. Brief 15 (explaining that "President Bush acknowledged the international legal obligation created by

*Avena*"). In other words, the international court made clear that Leal is entitled to a certain *procedure*, namely a hearing. That being so, a domestic court's guesses as to the results of that procedure are, as far as our treaty obligations are concerned, irrelevant.

This Court subsequently held that, *because Congress had not embodied our international legal obligations in a statute*, the Court lacked the power to enforce those obligations as a matter of domestic law. *Medellín* v. *Texas*, 552 U. S. 491, 525–526 (2008) ("The responsibility for transforming an international obligation arising from a non-self-executing treaty into domestic law falls to Congress"). And the Court later refused to grant a stay of execution in a similar case in significant part because "the President . . . has [not] represented to us that there is any likelihood of congressional . . . action." *Medellín* v. *Texas*, 554 U. S. 759, 759–760 (2008) *(per curiam).*

But these applications for stay do not suffer from this last mentioned legal defect. The Solicitor General has filed an *amicus* brief in which he states that "after extensive consultation with the Department of State and the Department of Justice," Senator Patrick Leahy, the chairman of the Senate Committee on the Judiciary, has introduced (and expressed an intention to hold speedy hearings on) a bill that would permit Leal and other similarly situated individuals to obtain the hearing that international law requires. U. S. Brief 8; see *id.,* at 8–9, 12–13 (describing the Consular Notification Compliance Act of 2011, S. 1194, 112th Cong., 1st Sess.). The *amicus* brief indicates that "congressional . . . action" is a reasonable possibility. *Medellín*, 554 U. S., at 760. And the Solicitor General urges this Court to grant a stay, providing Congress with adequate time to carry out the legal responsibility that this Court has held belongs to the Legislative Branch, *Medellín* v. *Texas*, 552 U. S. 491, 525–526 (2008), namely the enactment of a law that will bring the United

States into compliance with its treaty obligations and provide Leal with the hearing that those obligations legally demand. U. S. Brief 2.

At the same time, the Solicitor General sets forth strong reasons, related to the conduct of foreign affairs, for granting a stay. Representing the Executive Branch (hence the President), the Solicitor General tells us that "[p]etitioner's execution would cause irreparable harm" to "foreign-policy interests of the highest order." *Id.*, at 11. The Solicitor General says that failing to halt Leal's execution would place "the United States in irremediable breach of its international-law obligation," with

> "serious repercussions for United States foreign relations, law-enforcement and other cooperation with Mexico, and the ability of American citizens traveling abroad to have the benefits of consular assistance in the event of detention." *Id.,* at 12.

These statements are supported by the fact that the Government of Mexico has also filed a brief in which it states that declining to stay Leal's imminent execution

> "would seriously jeopardize the ability of the Government of Mexico to continue working collaboratively with the United States on a number of joint ventures, including extraditions, mutual judicial assistance, and our efforts to strengthen our common border." Brief for United Mexican States as *Amicus Curiae* 23 (internal quotation marks omitted).

This Court has described interests of the kind set forth by the Solicitor General as "plainly compelling." *Medellín*, 552 U. S., at 524; *id.,* at 537 (Stevens, J., concurring in judgment); see also *id.,* at 566 (BREYER, J., dissenting) (observing harms that would flow from noncompliance). The Court has long recognized the President's special constitutionally based authority in matters of foreign

relations. See, *e.g., United States* v. *Curtiss-Wright Export Corp.*, 299 U. S. 304, 320 (1936). And it has ordinarily given his views significant weight in such matters. *Jama* v. *Immigration and Customs Enforcement*, 543 U. S. 335, 348 (2005) (noting the Court's "customary policy of deference to the President in matters of foreign affairs"). It should do so here.

Finally, this Court has adequate legal authority to grant the requested stay. Should Senator Leahy's bill become law by the end of September (when we would consider the petition in the ordinary course), this Court would almost certainly grant the petition for a writ of certiorari, vacate the judgment below, and remand the case for further proceedings consistent with that law. Indeed, were the Solicitor General to indicate at that time that the bill was about to become law, I believe it likely that we would hold the petition for at least several weeks until the bill was enacted and then do the same. And this Court, under the All Writs Act, 28 U. S. C. §1651, can take appropriate action to preserve its "potential jurisdiction." *FTC* v. *Dean Foods Co.*, 384 U. S. 597, 603 (1966).

Thus, on the one hand, international legal obligations, related foreign policy considerations, the prospect of legislation, and the consequent injustice involved should that legislation, coming too late for Leal, help others in identical circumstances all favor granting a stay. And issuing a brief stay until the end of September, when the Court could consider this matter in the ordinary course, would put Congress on clear notice that it must act quickly. On the other hand, the State has an interest in proceeding with an immediate execution. But it is difficult to see how the State's interest in the immediate execution of an individual convicted of capital murder 16 years ago can outweigh the considerations that support additional delay, perhaps only until the end of the summer.

Consequently I would grant the stay that the petitioner

requests. In reaching its contrary conclusion, the Court ignores the appeal of the President in a matter related to foreign affairs, it substitutes its own views about the likelihood of congressional action for the views of Executive Branch officials who have consulted with Members of Congress, and it denies the request by four Members of the Court to delay the execution until the Court can discuss the matter at Conference in September. In my view, the Court is wrong in each respect.

I respectfully dissent.