# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-70004

United States Court of Appeals
Fifth Circuit

**FILED**

January 22, 2014

Lyle W. Cayce
Clerk

EDGAR ARIAS TAMAYO,

Petitioner - Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Application for a Certificate of Appealability from
the United States District Court for
the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:

Edgar Arias Tamayo ("Tamayo") is scheduled to be executed by the State of Texas on January 22, 2014. He has moved this court for a certificate of appealability ("COA") authorizing him to appeal the district court's denial of habeas relief concerning his claim based on a recent decision of the Inter-American Commission on Human Rights (the "IACHR"). Specifically, he seeks a certificate of appealability on the following question, together with a question pertinent to his associated stay request and governed by the determination of the application as to this question: "Whether Appellant is entitled to habeas relief as a result of the United States' binding international treaty

No. 14-70004

obligations—as interpreted in the decision of the Inter-American Commission on Human Rights dated January 15, 2014—which entitle him to remain alive to secure his access to the juridical review and reconsideration of his conviction and sentence."[1]  Because Tamayo has failed to make a substantial showing of the denial of a constitutional right with respect to this claim, his request for a COA and associated request for stay of execution are DENIED.

## Factual and Procedural History

Tamayo and Jesus Mendoza were arrested in the parking lot of a bar in Harris County, Texas on January 31, 1994, for robbing a patron.  After the men were searched and handcuffed, Officer Guy Gaddis of the Houston Police Department placed them in a patrol car, with Tamayo seated behind Officer Gaddis.  When Officer Gaddis stopped to make a phone call, Tamayo revealed to Mendoza that he had a gun in his waistband.  The evidence at trial showed that Tamayo managed to remove the gun from his waistband despite the fact that he was handcuffed.  When Officer Gaddis returned to the vehicle and drove away, Tamayo shot Officer Gaddis multiple times.  The patrol car crashed into a residence, and Tamayo escaped through a broken window.  The police were called to the scene and captured Tamayo as he ran down the street near the crash, still handcuffed.  Officer Gaddis was taken to the hospital immediately, but he was pronounced dead upon arrival.

Tamayo gave two written statements admitting that he had the gun in the police car, that he shot Gaddis, and that he knew Gaddis was a police officer.  The State presented evidence that Tamayo had purchased the gun several days before the murder.  At trial, the evidence indicated that Tamayo,

---

[1] Tamayo also seeks a COA with reference to his claim that Texas failed to honor its promises to him regarding merits review of his Vienna Convention claim.  We have previously addressed this issue and, therefore, dismiss this portion of his application as successive and barred by 28 U.S.C. 2244(b)(1).

rather than Mendoza, was the shooter (logically, it could be only one or the other, or both in concert, as Officer Gaddis could not have shot himself in the back of the head three times).  The jury found Tamayo guilty of capital murder and subsequently sentenced him to death.  Tamayo appealed to the Texas Court of Criminal Appeals ("CCA"), which affirmed his conviction.  *Tamayo v. State*, No. AP-72,033 (Tex. Crim. App. 1996).

In February 1998, Tamayo sought state habeas relief based on ineffective assistance of counsel ("IAC") for failing to investigate evidence of organic brain damage.  The CCA rejected Tamayo's claim in June 2003.  *Ex parte Tamayo*, No. WR-55,690-01 (Tex. Crim. App. 2003) (not designated for publication).

In September 2003, Tamayo filed his federal habeas application, reasserting his IAC claim based on counsel's failure to investigate the alleged organic brain injury.  Tamayo moved to stay the proceedings in 2005 to allow him to return to state court to present additional claims, including two claims under the International Court of Justice's ("ICJ") decision concerning the alleged violation of his consular notification rights under the Vienna Convention on Consular Relations (the "Vienna Convention"), Apr. 24, 1963, 21 U.S.T. 77, T.I.A.S. No. 6820 and a claim that he was ineligible for execution under *Atkins v. Virginia*, 536 U.S. 304 (2002).  The CCA dismissed these successive habeas petitions as an abuse of the writ.  *See Ex parte Tamayo*, 2010 WL 2332395 (Tex. Crim. App. 2010) (not designated for publication) (*Atkins* Claim); *Ex parte Tamayo*, 2008 WL 2673775 (Tex. Crim. App. 2008) (not designated for publication) (Vienna Convention Claim); *Ex parte Tamayo*, WR-55,690-02 (Tex. Crim. App. Sept. 10, 2003) (not designated for publication) (Vienna Convention Claim).

Tamayo amended his federal habeas petition, adding his Vienna Convention and *Atkins* claims.  In March of 2011, the federal district court

No. 14-70004

denied Tamayo federal habeas relief on his claims and determined that he was not entitled to a COA. *Tamayo v. Thaler*, 4:03-cv-3809 (S.D. Tex. Mar. 25, 2011).

Tamayo then sought a COA from this court, which we denied in December of 2011. *Tamayo v. Thaler*, No. 11-70005 (5th Cir. Dec. 21, 2011). In this opinion, we addressed Tamayo's IAC claims. We concluded that his claim of IAC predicated on a failure to investigate and present evidence of his childhood circumstances was procedurally barred as unexhausted. *Id.* at *8. We concluded that jurists of reason would not debate the reasonableness of the state court's disposition of his IAC claim based upon the failure to investigate and present mitigating evidence of organic brain damage. *Id.* at *9. In this regard, we analyzed the standards of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires both ineffectiveness and prejudice in order for an IAC claim to be successful. *Tamayo*, No. 11-70005, at *9. We concluded that Tamayo had not raised a debatable issue on the prejudice prong because of the "double-edged sword" nature of the proffered evidence. *Id.* at *9-12. We also addressed Tamayo's claim of mental retardation under *Atkins v. Virginia*, 536 U.S. 304, 321 (2002). We noted the untimeliness of his claim under federal law and further stated:

> The record indicates that Tamayo's habeas counsel exercised due diligence after *Atkins* was decided and had Tamayo tested; however, the initial test showed that Tamayo was not mentally retarded. It was only after Tamayo was tested again after the limitations period had run that he was diagnosed as mentally retarded. The factual predicate for the claim—Tamayo's alleged mental retardation—was available when Tamayo was tested initially; it was the person evaluating the factual predicate that changed.

*Tamayo*, No. 11-70005, *13. Finally, we denied his COA application as to a Vienna Convention violation claim because "[t]he United States Supreme

4

No. 14-70004

Court has never held that the Vienna Convention creates a private right of action that is enforceable by an individual." *Id.* at \*14.  We also denied his request regarding alleged promises of Texas as unexhausted and procedurally barred. *Id.* at \*15. The Supreme Court denied Tamayo's petition for certiorari in November of 2012. *Tamayo v. Thaler*, 133 S. Ct. 608 (2012).

On September 17, 2013, in response to the state's motion, the 209th Harris County District Court scheduled Tamayo to be executed on January 22, 2014.  On December 13, 2013, Tamayo filed a written application for clemency with the Texas Board of Pardons and Paroles (the "Board").

On January 13, 2014, Tamayo filed a § 1983 claim in federal district court asserting that the Board's procedures violate his due process rights.  He further sought a TRO or preliminary injunction preventing the Board from voting and the Governor from acting on the Board's recommendation pending the outcome of his lawsuit.  He further sought a stay of execution pending his discovery requests in connection with his § 1983 claim.  On January 21, 2014, the district court denied his request for a temporary restraining order and for a preliminary injunction. *Tamayo v. Perry*, No. 1:14-CV-31 (W.D. Tex. Jan. 21, 2014).  We affirmed the district court's decision. *See Tamayo v. Perry*, No. 14-70003 (5th Cir. Jan. 22, 2014).  The Board declined to recommend clemency for Tamayo on January 21, 2014.

On January 14, 2014, Tamayo filed a successive habeas petition in Texas state court, alleging, among other things, that he did not receive a fair trial in light of "newly discovered evidence" that the Harris County District Attorney's office coached Mendoza by "instruct[ing] him how he was to testify, and what he should—and should not—say."  The CCA denied relief. *Ex parte Tamayo*, No. WR-55,690-05, 2014 Tex. Crim. App. Unpub. LEXIS 59, at \*3 (Tex. Crim. App. Jan. 21, 2014) (not designated for publication).

No. 14-70004

On January 16, 2014, Tamayo filed another successive habeas petition in Texas state court, arguing that his sentence of death is "illegal and unconstitutional" based on his alleged mental retardation. In support of this claim, he relied on the newly-released decision of the IACHR. The IACHR's decision concluded, *inter alia*, that Tamayo presented evidence of mental disability that should have been reviewed on the merits by the state courts[2] and that the state's violation of the Vienna Convention through its denial of his consular notification rights prejudiced Tamayo.[3] In connection with this successive habeas petition, Tamayo filed a request for a stay of execution in light of what he believes are novel issues of law—including the amount of deference, if any, that should be given the IACHR's decision by Texas state courts.

In response, the state explained that Tamayo's claim based on the Vienna Convention has been previously raised and dismissed in two state habeas proceedings and, therefore, is without merit. The state further pointed out that in order for a "new law" to be cognizable under TEX. CODE CRIM. PROC. art. 11.071 § 5—and, therefore, permit leave to file a subsequent application for a writ of habeas corpus—it must emanate from "a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state." *See Ex parte Medellin*, 223 S.W.3d

---

[2] Specifically, the IACHR's decision stated: "[T]he [IACHR] concludes that the United States violated Articles I and XXVI of the American Declaration to the detriment of Mr. Tamayo by refusing to provide funds for an independent expert evaluation and by denying any opportunity to present evidence regarding this mental and intellectual disability and be heard on the merits of that evidence." IACHR's Decision at p. 37.

[3] Specifically, the IACHR's decision stated: "Given the comprehensive assistance provided by the Mexican Government to its citizens in death penalty cases in the United States, the IACHR believes that there is a reasonable probability that, had Mr. Tamayo received consular assistance at the time of his arrest, this would have had a positive impact in the development of his criminal case." IACHR's Decision at p. 31.

No. 14-70004

315, 352 (Tex. Crim. App. 2006) (citation and quotation marks omitted). Similar to the ICJ opinion concerning consular rights provided by the Vienna Convention under which Medellin sought leave to file a subsequent habeas petition, the state argued that the IACHR decision did not emanate from these sources and, therefore, Tamayo failed to demonstrate that he was entitled to file a subsequent habeas petition under TEX. CODE CRIM. PROC. art. 11.071 § 5. The state further argued that the CCA should not exercise original habeas jurisdiction with respect to the IACHR decision because the CCA declined to exercise original jurisdiction based on Medellin's similar request based on the ICJ opinion. *See Ex parte Medellin*, 280 S.W.3d 854, 856 (Tex. Crim. App. 2008). On January 21, 2014, the Texas Court of Criminal Appeals denied relief. *Ex parte Tamayo*, No. WR-55,690-06, 2014 Tex. Crim. App. Unpub. LEXIS 59, at *3 (Tex. Crim. App. Jan. 21, 2014) (not designated for publication).

Following this latter ruling, Tamayo filed a federal habeas petition in connection with his claim based on the IACHR's decision. The district court concluded that the petition was a successive petition and transferred it to our court under 28 U.S.C. § 1631. *Tamayo v. Stephens*, No. 4:03-CV-3809 (S.D. Tex. Jan. 21, 2014). We concluded that the application predicated on last week's IACHR decision was not successive and remanded to the district court. *Tamayo v. Stephens*, No. 14-20015 (5th Cir. Jan. 21, 2014). The district court denied habeas relief, denied a motion to stay the execution, and declined to issue a COA. *Tamayo v. Stephens*, No. 4:03-CV-3809 (S.D. Tex. Jan. 22, 2014). Tamayo now seeks a COA from our court.

## Discussion

A § 2254 petitioner must obtain a COA to appeal the district court's denial of his petition. *Blue v. Thaler*, 665 F.3d 647, 653 (5th Cir. 2011); *see also*

28 U.S.C. § 2253(c)(2).  A COA may be issued only after the petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2).  To meet this standard, Tamayo must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *See Miller-El*, 537 U.S. 322, 336 (2003).    As we have previously observed in death penalty cases, "any doubts as to whether a COA should issue must be resolved in the petitioner's favor."  *Blue*, 665 F.3d at 653 (citation and internal quotation marks omitted).

To understand whether reasonable jurists would debate the claim, we must consider standards applicable to federal review of state habeas proceedings.  *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000) (noting that "the determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)").  To receive federal habeas relief on his claim, Tamayo would have to show that the CCA's denial of his state habeas petition was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).  Importantly, "[t]he question under [the Antiterrorism and Effective Death Penalty Act of 1996] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

Tamayo admitted to the state court that his petition reflects a novel argument. By definition, then, we cannot conclude that he has made the necessary showing that jurists of reason would debate whether the state's resolution of his claims represents an unreasonable application of federal law as construed by the Supreme Court.

The Court has addressed the effect of international law in this context in *Medellin v. Texas*, 552 U.S. 491 (2008). In *Medellin*, the ICJ issued a decision holding that the United States breached its obligations under Article 36 of the Vienna Convention by failing to notify Tamayo and other Mexican nationals of their right to consular assistance after their arrests. *Id.* at 497-98; *see also Case Concerning Avena and Other Mexican Nationals (Mex. v. U.S.)* ("*Avena*"), 2004 I.C.J. 12. In light of this violation of the Vienna Convention, the ICJ directed that courts review the convictions and sentences of these Mexican nationals. Following this decision, then-President George W. Bush issued a memorandum stating that "'the United States will discharge its international obligations under the decision of the International Court of Justice in [*Avena*], by having State courts give effect to the decision in accordance with general principles of comity in cases filed by the 51 Mexican nationals addressed in that decision.'" *Medellin*, 552 U.S. at 503 (alteration in original) (quoting President George W. Bush, Memorandum for the Attorney General (Feb. 28, 2005) [hereinafter "President's Memorandum"]).

When the State of Texas declined to give effect to the ICJ opinion, Medellin filed a state habeas petition seeking to compel the state to review his conviction and sentence. *Id.* at 504. Following the state's denial of relief, the Supreme Court granted certiorari and rejected Medellin's claim that the ICJ's

judgment concerning the Vienna Convention created a "binding" obligation on state and federal courts. *Id.* The Court explained that the Vienna Convention—as well as the Optional Protocol that permitted claims alleging violations of the Vienna Convention to be brought in the ICJ—was not "self-executing" and therefore could not be binding domestic law unless Congress enacted a statute implementing it. *Id.* at 514. As a result, even in light of the Presidential Memorandum, the Court held that Texas could not be compelled to give effect to the ICJ's judgment or the obligations flowing from the Vienna Convention. *Id.*

Thus, the only guidance we have from the Court for this case goes the opposite way. In the ensuing 10 years since *Medellin*, Congress has failed to act, leaving us in the position of being unable to address the merits of the IACHR decision by way of a federal habeas. *See Leal Garcia v. Texas*, 131 S. Ct. 2866, 2868 (2011) (per curiam) (noting the failure of Congress to enact implementing legislation and stating that "[i]f a statute implementing *Avena* had genuinely been a priority for the political branches, it would have been enacted by now."). Moreover, as the district court observed, the federal circuit courts that have considered this issue have concluded that IACHR decisions do not create a binding obligation on domestic courts. *See, e.g., Flores-Nova v. Attorney Gen. of U.S.*, 652 F.3d 488, 493 (3d Cir. 2011); *In re Hicks*, 375 F.3d 1237, 1241 n.2 (11th Cir. 2004); *Garza v. Lappin*, 253 F.3d 918, 924-25 (7th Cir. 2001).

We respect the concerns expressed by the executive branch, such as Secretary of State Kerry who wrote a letter on Tamayo's behalf, but "[w]e have no authority to stay an execution in light of an 'appeal of the President' presenting free-ranging assertions of foreign policy consequences, when those assertions come unaccompanied by a persuasive legal claim." *Leal Garcia*, 131

No. 14-70004

S. Ct. at 2868 (internal citations omitted).   Notably, the only significant difference between Tamayo's first request for a COA and the present request is that the latter is based on findings of the IACHR, rather than a decision of the ICJ. The same considerations that animated our decision there, compel the result here.[4]  *See Tamayo*, 11-70005, *16.

We nonetheless issue this opinion as quickly as possible, to allow Tamayo the ability to present his arguments for overruling or revising the above-described precedents to the Supreme Court.

## Conclusion

Tamayo's application for a COA and associated request for stay of execution is DENIED.

---

[4] We further observe that Tamayo filed several state habeas petitions post-dating *Atkins v. Virginia*, 536 U.S. 304 (2002), in which he did not allege that his conviction and sentence were unconstitutional as a result of his alleged mental retardation.  *See Ex Parte Tamayo*, No. 9422714-E (Jan. 14, 2014); *Ex Parte Tamayo*, No. 9422714-C (Mar. 21, 2005); *Ex Parte Tamayo*, No. 9422714-B (June 15, 2003).  Importantly, all of these filings came *after* the Mexican consulate was notified of Tamayo's situation and the Supreme Court issued its decision in *Atkins*.